No. 16-30213

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

V.

STEVEN DOUGLAS ROCKETT,

DEFENDANT-APPELLANT.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

THE HONORABLE MICHAEL H. SIMON, U.S. DISTRICT JUDGE
D.C. NO. 3:13-CR-00557-SI

———————————

BRIEF OF PLAINTIFF-APPELLEE
———————————

BILLY J. WILLIAMS
UNITED STATES ATTORNEY
DISTRICT OF OREGON
**KELLY A. ZUSMAN**
APPELLATE CHIEF
GARY Y. SUSSMAN
PAUL T. MALONEY
ASSISTANT UNITED STATES ATTORNEYS
1000 SW THIRD AVENUE, SUITE 600
PORTLAND, OREGON 97204-2902
TELEPHONE: (503) 727-1000

# TABLE OF CONTENTS

Table of Authorities .................................................................................................ii

Statement of Jurisdiction & Bail Status ........................................................... 1

Statement of Issues Presented ........................................................................... 1

Statement of Facts ............................................................................................... 1

A.  N.S.:  He said he wanted to go "balls deep"; "It hurt really bad." .................... 2

B.  Shower Scenes:  Boys from the Philippines ........................................ 5

C.  "Only way I can help is if [you] send the pictures." ............................ 7

D.  We almost missed it:  the hidden bathroom camera ......................................... 10
    Government Trial Exhibit 8 (photographs)..........................................11-12

E.  Procedural History ........................................................................... 13

Summary of Argument ....................................................................................... 18

Argument

    A.  Standard of Review ................................................................... 21

    B.  The District Court Properly Applied this Court's "Lascivious
        Exhibition" Test ...................................................................... 21

    C.  Defendant Took Substantial Steps Towards Producing Child
        Pornography Using M.G. and H.J. (Counts 4 & 5)................................. 27

Conclusion............................................................................................................ 30

Statement of Related Cases ............................................................................... 31

Brief Format Certification (Form 8)

i

# TABLE OF AUTHORITIES
## FEDERAL CASES

*United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986) ........................... 21, 22, 23, 26, 27

*United States v. Finazzo*, 841 F.3d 816 (9th Cir. 2016) .............................................. 26

*United States v. Franz*, 772 F.3d 134 (3d Cir. 2014) ............................................... 22

*United States v. Goetzke*, 494 F.3d 1231 (9th Cir. 2007) ............................................ 25, 28

*United States v. Hodge*, 805 F.3d 675 (6th Cir. 2015) ............................................ 22, 24

*United States v. Hofus*, 598 F.3d 1171 (9th Cir. 2010) ............................................... 27

*United States v. Larkin*, 629 F.3d 177 (3d Cir. 2010) ............................................... 24

*United States v. Lohse*, 797 F.3d 515 (8th Cir.), *cert. denied*, 136 S. Ct. 600 (2015) ........... 22

*United States v. McCall*, 833 F.3d 560 (5th Cir. 2016),
    *cert. denied*, 137 S. Ct. 686 (2017) ....................................................... 22, 24

*United States v. Overton*, 573 F.3d 679 (9th Cir, 2009) .......................................... 22

*United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) ............................................. 21

*United States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017) ......................................... 22, 23

*United States v. Schaff*, 948 F.2d 501 (9th Cir. 1991) ........................................... 21

*United States v. Sheldon*, 755 F.3d 1047 (9th Cir. 2014) ......................................... 27

*United States v. Shields*, 844 F.3d 819 (9th Cir. 2016) .......................................... 21

*United States v. Smith*, 795 F.2d 841 (9th Cir. 1986) ............................................ 25, 26

*United States v. Ubaldo*, 859 F.3d 690 (9th Cir. 2017) ........................................... 28

*United States v. Wells*, 843 F.3d 1251 (10th Cir. 2016), *cert. denied*, ___ S. Ct. ___,
    2017 WL 1037293 (U.S. Oct. 2, 2017) (No. 16-8379) ................................... 22, 24

# TABLE OF AUTHORITIES
## FEDERAL CASES

*United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) ........................................22, 23, 25

## FEDERAL STATUTES & RULES

18 U.S.C. § 2251 ................................................................................. 14, 15, 25, 27

18 U.S.C. § 2252A ........................................................................................... 15

18 U.S.C. § 2423 ............................................................................................. 14

18 U.S.C. § 3231 ............................................................................................... 1

28 U.S.C. § 1291 ............................................................................................... 1

Fed. Rule Crim. P. 29 ..............................................................................17, 21, 27

## STATEMENT OF JURISDICTION & BAIL STATUS

The district court had subject matter jurisdiction over this criminal proceeding. 18 U.S.C. § 3231. The district court entered judgment on September 13, 2016 (ER 1).[1] Defendant filed a timely notice of appeal (ER 57). This Court has jurisdiction. 28 U.S.C. § 1291. Defendant is currently serving his sentence at USP Tucson with a projected release date of February 5, 2066.

## STATEMENT OF ISSUES PRESENTED

Defendant never challenged the legal test for whether naked photographs he took of children constituted a "lascivious exhibition." In fact, he proffered the very jury instruction that includes the subjective factor he now claims is unconstitutional. Did defendant invite the error he argues on appeal? Alternatively, did the district court plainly err when it determined that there was sufficient evidence to support the jury's verdict?

## STATEMENT OF FACTS

Defendant was a successful computer chip designer and an avid photographer. He combined these skills when he sexually abused children and produced sexually explicit photographs and videos of naked children. Some of his exploits were overt:

---

[1] "ER" refers to the defendant's Excerpts of Record. "PSR" refers to the Presentence Report. "ECF No." refers to the docket entry in the District Court Clerk's Record. "SER" refers to the government's Supplemental Excerpts of Record. Cited exhibits (contraband photos and videos) are available upon request.

1

his victims described how he barged into bathrooms, camera in hand, shooting photographs of them as they attempted to cover themselves. One girl described how he raped her for the first time when she was 12 years old, camera in hand, capturing the image of his own penis as it entered her vagina.

Defendant also acquired naked photographs of children through hidden cameras. He used a hidden video camera to capture children showering in his hotel room in the Philippines, and he installed hidden video cameras in the bathroom walls of his homes in Aloha and Forest Grove, Oregon.

His skills with computer technology were highly sophisticated, and he used those skills to hide his criminal activities. Most of the contents of his hard drives were heavily encrypted and impenetrable. His encryption, described by a forensic examiner as the "most sophisticated" he had ever encountered, prevented investigators from discovering most of what was contained in defendant's computers. But agents were able to recover defendant's recent cache, which included images of child pornography, and they recovered a series of surreptitious videos of young boys as they entered and exited shower stalls.

### A.    N.S.:   He said he wanted to go "balls deep"; "It hurt really bad."

The investigation into defendant's activities began when N.S. told her mother that defendant had raped her. Beginning in 2009, N.S. lived with defendant and his family while her parents struggled financially; her family was, at that time, homeless.

2

(SER 290). N.S. was in the third grade, and defendant began sexually abusing her when she arrived home from school a few hours earlier than defendant's children. "He was scarey," she explained. (Ex. 24).[2] He would take her into his bedroom, tell her to undress, then touch her private parts and take pictures. (*Id.*). The photographs did not include her face, just her private parts with her legs spread. (*Id.*).

In 2010, when she was in the fifth grade, defendant helped her dye her hair. While in the bathroom, he "had me put on a bathing suit." (*Id.*). He then told her to take off the bottom half and he "used his tongue" on her vagina. (*Id.*). It felt "weird." (*Id.*).

N.S.'s family fell on financially hard times again in 2011, and N.S. again moved into defendant's home. (SER 291). By this time, defendant was divorced and his wife was no longer living with him. N.S. described how defendant "popped [her] cherry" with his finger. It "hurt really bad and I screamed." (Ex. 24). A few weeks later, she and defendant ate Chinese take-out. (*Id.*). Defendant offered her alcohol and she declined. Defendant tried to persuade her to have sex with him; he explained that it would "hurt less later" if she permitted him to take her "virginity right now." (*Id.*). She said "no." He persisted.

---

[2] Exhibit 24 is a sealed video of N.S.'s interview at CARES Northwest. The government is filing a motion to transmit physical exhibit (a copy of this video) with the Court under seal.

Defendant told her to take her clothes off, then he removed his underwear. (*Id.*). They were lying on the couch together. (*Id.*). Defendant climbed on top of her and put "his dick in my vagina." (*Id.*). At one point, defendant grabbed a digital camera and took a photograph, telling N.S. that he wanted to go "balls deep." (*Id.*). N.S. never saw that photograph. (Sealed SER 590).

Defendant raped her two to three more times during her 2011 stay. (Ex. 24). He told her that if she told no one, he would buy her a phone. (*Id.*). Defendant did buy N.S. several phones, including the iPhone she used to communicate with him via Facebook in 2013. (Sealed SER 577).

N.S. used more data with her iPhone than defendant's billing plan allowed, and defendant wanted something in return. In a series of Facebook message exchanges, defendant told N.S. that he wanted "high quality pictures." (Ex. 2, ER 67-77). He wanted to see how she "had grown" since he had last seen her. He told her that he would increase her data plan, but "in return you need to send me some updated good quality pictures of yourself." He repeated his demand at least six times. And to make sure that N.S. understood exactly what he wanted, he told her "they better be good quality and no shy." (Ex. 2, ER 67-77; Sealed SER 583).

N.S. demurred. She told him she was busy. (Ex. 2, ER 67-77). She told him she did not have a mirror. (*Id.*). She told him "I dont feel confterable. (sic) I never did." (Ex. 2, ER 73, 152). She understood exactly what he wanted—"naked

pictures"— and she knew that because she knew him and what he wanted from her. (Sealed SER 583-586).

Defendant persisted: "make sure you show front and back and show everything no shy." (Ex. 2, ER 67-77). He also started giving her specific advice about how to take the photos: "go take a shower and take pictures while you are in there." She need not show her face, just "knees up." (*Id.*). And if she continued to refuse him? "You will be going back to your 300mb limit" and "you will owe me the other types of pictures." (Ex. 2, ER 74, 153).

Then N.S. told defendant that her phone had been stolen. (Ex. 2, ER 75). He was willing to replace it, but it would cost her: "if you are going to call the phone a lost and want a replacement phone then you will need to come over here and spend the night and do work to help pay for the replacement phone." (*Id.*). Again, N.S. understood that he wanted the same things he had taken from her in 2009, 2010, and 2011. (Sealed SER 588-590).

But the lure of a new iPhone was not enough; N.S. told him "Ill just go without one. i don't want to do that stuff again . . . i have nightmares cuz of it and i cry myself to sleep alot sense then …" (Ex. 2, ER 77).

## B.    Shower Scenes:    Boys from the Philippines

Defendant met his wife in Cebu City, the Philippines. (SER 292). He traveled back there several times between 2000 and 2013. (Ex. 29, ER 208; SER

235-238).    During some of those visits, he stayed at the Park Lane Hotel near

Baranguy Luz, an "impoverished" area.    (SER 19).    He liberally handed out pesos

to children and invited them to join him in his hotel room.    (SER 20).    Three of

those children testified at trial.

G.G. was 12 years old when he met defendant in Cebu City.    (SER 24).

Defendant invited him and other similarly aged boys to his Park Lane hotel room.

G.G. and some of the other boys showered at the hotel.    While G.G. stood naked in

the shower, defendant entered the bathroom without knocking, taking pictures with a

"big camera."    (SER 31).    G.G. tried to cover himself, but defendant told him

"don't be shy."    (SER 32).    Later, via Facebook chats, defendant asked G.G. to

send him "privacy pictures," which G.G. understood to mean naked photos.    (SER

33-34).    G.G. did not send the photos.    (SER 35).

V.P. was also 12 years old when he went to defendant's Park Lane hotel room

for a shower.    (SER 61, 63).    Defendant took photos of him too.    (SER 64).    V.P.

"was afraid" that the photos would "spread."    (*Id.;* SER 65).    Defendant sent V.P.

gifts:    clothes, and a cell phone with a camera.    (SER 66).    V.P. did not see

defendant again, however, "because of the pictures."    (SER 77).

J.D.L. saw his first movie in a theater with defendant when he was 11 years old

in 2007.    (SER 106-07, 129).    Defendant also gave him 100 pesos and a visit to his

hotel room at the Park Lane hotel.    (SER 106, 108-09).    Defendant told J.D.L. that

he could play games and watch T.V. When defendant offered J.D.L. a hot shower (that he lacked at home), J.D.L. assented. (SER 110).

While he was showering, however, defendant "suddenly" entered the room, touched J.D.L.'s leg and penis, tried to stroke J.D.L.'s penis and put his mouth on it. (SER 116). J.D.L. "felt very uncomfortable" and he has "nightmares that still haunt me." (SER 109, 117). Defendant told J.D.L. not to tell anyone what had happened. (SER 117).

Unbeknownst to J.D.L., defendant filmed him while he showered. (Ex. 5; ER 125-145). J.D.L. identified himself in the video (SER 111-12), and confirmed that he did not know he was being filmed. (*Id.*). After this encounter, defendant sent J.D.L. a Gameboy. (SER 119).

Investigators discovered that defendant had placed a hidden camera into a Sony "Dream Machine" travel clock. (SER 185). The clock housed an SD card that stored the captured images. (*Id.*).

### C. "Only way I can help is if [you] send the pictures."

Defendant sent candy and offered to help other Filipino children pay for school supplies, but his largesse was conditional. His sister-in-law, Charis Jumao-as (who lived in Cebu City), had a young daughter (H.J.) who had an even younger friend (M.G.). (PSR ¶ 20). Defendant wanted naked pictures of the girls. (PSR ¶¶ 19-20). His Facebook exchanges with Jumao-as and M.G. reveal his strategy. (Ex. 3,

7

Ex. 4, ER 78-83, 84-123).

M.G. was just 8 years old when defendant corresponded with her via Facebook. (SER 84, 86).[3] When she told him she had no school supplies, he told her he could send her money for supplies "if you send me the special pictures." (Ex. 3, ER 78-83). M.G. understood that defendant wanted naked photos. (SER 86-87). She remembered that H.J.'s mother took photos of the two of them, but could not recall if they were naked or wearing shorts. (SER 101).

Recovered correspondence with H.J.'s mother was more extensive. (Ex. 4, ER 84-123). Defendant sent H.J. a "digi cam" and cell phone "for her birthday" in February 2013. (*Id.*). He soon urged Jumao-as to teach H.J. how to use the digi cam "so she can send me pictures of the neighborhood and her friends." (*Id.*). Defendant sent Jumao-as money for medicine and other items, but he kept steering the conversation back to the photos he wanted of H.J. By April, he told Jumao-as: "I excited to see her (H.J.) pictures with digi cam." (*Id.*). He also knew that M.G. and H.J. were friends, so he encouraged Jumao-as to take pictures of both girls together. (*Id.*).

By the end of April, defendant was becoming more insistent and more explicit about what he wanted. "When [H.J.] gets digi cam you have to send me private

---

[3] M.G. also testified at trial; she is G.G.'s younger sister. Neither H.J. nor her mother, Charis Jumao-as, were willing to travel to the United States to testify.

pictures of [H.J.] and her friend [M.G.] so I can see how they are eating and how their bodies change as they get older." (*Id.*). Later that same day, defendant further explained that he wanted pictures of the girls "both front and back full body." (*Id.*).

Three days later when he repeated his demand for "more private pictures" of H.J. and M.G., Jumao-as asked him "what kind." (*Id.*). He responded: "no clothes, would like to see how healthy they are and be able to see how their bodies change as they get older." (*Id.*). When Jumao-as explained that she predicted the girls would resist, defendant suggested that she "have them model swim suits" then just ask them to remove the suits and "take pictures front and back." (*Id.*). To sweeten the pot, he directed Jumao-as to tell H.J. that he would send more gifts and candy "if she takes good pictures with [M.G.]." (*Id.*). And to avoid any misdirected deliveries, he told Jumao-as "make sure to email pictures to stevenrockett@comcast.net." (*Id.*).

The next day (May 2), defendant told Jumao-as that he wanted to send her more money and he would do so "once you send me the new pictures." (*Id.*). He repeated this sentiment again on May 8, and reminded Jumao-as (twice) of what he expected in return for the money: "make sure it is a lot of pictures and shows front and back and no shy. and no worry, only I will ever see the pictures." (*Id.*). "Send me a lot of the pictures and I will send the money." (*Id.*). By June 1, when Jumao-as asked defendant for money for school supplies, he again underscored that his

financial support depended on her ability to supply naked photos of the girls: "I can send some money tonight to help with supplies but first need to send me the pictures I request before but of Harvey and [H.J.] both." (*Id.*).

According to Jumao-as, despite her entreaties, H.J. resisted. H.J. was "very shy." Defendant told Jumao-as to tell H.J. "if she like to have new school supplies" and if she wanted more chocolates, she needed to cooperate with the photos, otherwise "then not much more can do. :(" (*Id.*). In response, Jumao-as told defendant: "I try to picture of [H.J.] now she just finish a bath but she dont like." (*Id.*). She asked defendant "there no other option so you can help?" (*Id.*). He told her no. (*Id.*). She asked again, "why naked?" (*Id.*). Jumao-as explained that H.J.'s reluctance was understandable because she is "almost a teenager." (*Id.*). Defendant insisted that no one but him would ever see them, and he confirmed that his support depended on H.J.; she "will have to give something also" because defendant expected that he would "have to get some nice in return." (*Id.*).

No photos of H.J. or M.G. were ever recovered from defendant's computers.

**D.   We almost missed it:   the hidden bathroom camera.**

The tiny camera defendant hid in the wall of his bathroom in Forest Grove was so well camouflaged it looked like a small nail in the sheetrock. (SER 264). The lead Washington County investigator explained that he "missed" it altogether; another detective more familiar with the devices spotted a coaxial wire from a mini-DVR in

defendant's bedroom that ran into a wall *under* a switch plate.   (Ex. 8, p.17 (depicted below), ER 173; SER 264-65, 286).



Detectives followed the wire into the crawl space and across into the bathroom where they discovered a hidden camera located behind a very small hole in the wall near the bathroom door:



/////

/////

11



Exhibit 8, pages 21 (modified to highlight the hole), 22 & 24 (ER 177, 178, 180).

To reach the camera, they had to cut it out from the drywall. (SER 265-67). The pinhole found in the Forest Grove home matched the size and relative location of a similar pinhole discovered in defendant's previous home in Aloha. The hole in the Aloha bathroom had been patched. (SER 245; Ex. 25, ER 201-206). The pinhole found in the Aloha house was significant because a camera placed in that approximate location surreptitiously captured videos of two 12-year old twin boys who were friends of defendant's own sons.[4]

In the videos, the boys are naked as they enter and exit defendant's shower. (Exhibit 10, files labeled 00f4d0af_4993-2729.M2V (B.S.), and 6564f2f5_0-13235.DIF (D.S.)). Defendant positioned the camera just above the counter facing the shower;

---

[4] Videos of other boys captured by the hidden camera in defendant's Forest Grove home formed the basis for part of the state charges reflected in PSR ¶ 153.

12

as the boys enter and exit the shower, their torsos and genitals are clearly visible, but their feet are not. As one boy (B.S.) walks closer to the camera, his head is partially cut off while his torso and genitals remain visible at all times. Both boys also confirmed that defendant sexually assaulted them.

D.S. and his twin brother B.S. were good friends with defendant's sons. They played sports together and attended the same middle school. (SER 188, 211-212).[5] They had many sleepovers at defendant's home in Aloha, and on nearly every visit, they took showers either on their own initiative or at defendant's direction. (SER 191, 213-215). In addition to the hidden camera videos, defendant would just "walk in with his camera" and take pictures while the boys were naked in the shower. (SER 192, 216). Defendant also touched their genitals. (SER 197, 220).

Both boys described feeling "awkward" about defendant's actions. (SER 193, 219). B.S. said that he told no one at the time because he was "scared" (SER 222); D.S. told no one because "I thought he would hurt me." (SER 208).

### E. Procedural History

Defendant was initially arrested by Washington County detectives in 2013, and was charged in Washington County with rape, sex abuse, sexual exploitation, and sodomy for his actions with N.S. and others. (PSR ¶¶ 152-153). He was tried and

---

[5] D.S. and B.S. testified that they were ages 10-12 and in the 4th-6th grades during the events described in their testimony. (SER 190, 213). Both boys were 14 years old when they testified at trial. (SER 186, 209)

convicted of those offenses and was sentenced in March of 2015 to 630 months. (*Id.*). He is appealing those convictions.

The investigation into the charges involving N.S. prompted the FBI to begin investigating defendant's overseas trips to the Philippines. (PSR ¶ 56). After reviewing the computer forensic evidence found on defendant's computers and memory cards from his hidden cameras, and after interviewing numerous witnesses in the Philippines, the federal case commenced.

A grand jury issued a series of indictments culminating in the final, Second Superseding Indictment charging defendant with nine counts. (ER 250). During trial, the court granted the government's motion to dismiss Count 3. (ECF No. 134). The charges submitted to the jury are briefly summarized as follows:

• Count 1: Defendant produced child pornography outside of the United States in violation of 18 U.S.C. § 2251(c). Evidence supporting this count includes the testimony of the three boys from Cebu City (G.G., V.P., and J.D.L.), contraband images included within Exhibit 10 (1-3-200.mov; 1-13-200.mov) as well as the evidence supporting Counts 4 and 5.

• Count 2: Defendant engaged in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c). Evidence supporting this count includes J.D.L.'s testimony and Exhibit 10 (1-3-200.mov; 1-13-200.mov).

• Count 4: Defendant attempted to produce child pornography by coercing

14

M.G. to take or pose for lascivious photos, in violation of 18 U.S.C. § 2251(a) and 2251(e).   M.G.'s testimony and Exhibits 3 and 4 support this conviction.   (ER 78-123).

• Count 5:   Defendant attempted to produce child pornography by coercing H.J. to pose for lascivious photos.   Exhibit 4 and testimony from the Forest Grove detective who recovered the exhibit supports this conviction.   (SER 4-18).

• Count 6:   Defendant attempted to produce child pornography by coercing N.S. to produce sexually explicit photos of herself in 2013, in violation of 18 U.S.C. § 2251(a).   N.S.'s testimony, the videotape of her CARES Northwest interview (SER 154; Ex. 24), her Facebook exchange with defendant (Ex. 2, ER 67-77), and testimony from her mother directly support this conviction.

• Counts 7 & 8:   Defendant produced or attempted to produce child pornography when he photographed and surreptitiously recorded D.S. and B.S. when the boys showered in his Aloha home, in violation of 18 U.S.C. § 2251(a).   The boys' testimony and videos included in Exhibit 10 (00f4d0af_4993_2729.M2V (B.S.) and 6564f25-)-13235.DIF (D.S.)) directly support this conviction.

• Count 9:   Defendant possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).   The first set of images included within Exhibit 10 (e.g., "hotel image" and maskgirl.jpg) and the forensic testimony support this conviction.

In addition to the evidence outlined above, the government also established at

15

trial that defendant's computers were manufactured in Austin, Texas, and were shipped to defendant in Oregon.    (SER 287, 298, 300; Ex. 28, SER 546-554). There was no dispute that defendant had used a means of interstate commerce to commit the charged offenses.

The computers and hard drives were, however, encrypted using programs so sophisticated that the FBI was unable to defeat them despite considerable effort. (SER 313, 334-35, 392).    Defendant's set up was "the most complex computer system with anti-forensic capabilities" that one forensic analyst had ever encountered. (SER 400).    Defendant also used a TOR browser that enabled him to anonymously access the Internet.    (SER 325).    And he installed an evidence eliminator program (East-TecEraser) that further masked his activities.    (SER 327-328).

Investigators found numerous unencrypted files for items like tax returns and documents from defendant's divorce.    (SER 396).    The computers were turned off when the agents arrived, which further curtailed their ability to look for encryption keys in the computer's memory.    (SER 311).    They were able, however, to access defendant's internet cache from the day before the search warrant was executed, and this is where they located the images included in the first file folder within Exhbit 10. (SER 327-328, 372).    They also found the surreptitious videos of D.S. and B.S. taken while they showered at defendant's Aloha home. (SER 366-367, 415-416).    The data had been deleted, but was recovered.    (SER 422).    Defendant had edited the videos

16

using video editing software found on one of his computers. (SER 366-368, 413).

After the parties rested, defendant orally moved for a judgment of acquittal on Counts 4, 5, 7, 8 and 9. (SER 473). He did not challenge the sufficiency of the evidence supporting Counts 1, 2, or 6. (*Id.*). Defendant argued that none of his efforts constituted a substantial step to satisfy the requirements for an attempt, and he argued that the bathroom footage of D.S. and B.S. failed to satisfy this Court's test for "lascivious" images. (SER 473-474).

The trial judge denied defendant's Rule 29 motion, noting that "at least two" of the factors relevant to determining if an image is lascivious were satisfied. (SER 476). "We have jury questions" on all counts. (*Id.*). The court instructed the jury using defendant's proposed jury instruction on the meaning of the term "lascivious exhibition." (SER 481-482; ECF No. 112, p.12). The jury returned a guilty verdict on all counts. (ECF Nos. 136, 137).

The subsequent Presentence Report calculated an adjusted offense level of 52 (PSR ¶¶ 146, 147), prior to application of the guideline cap of 43. (PSR ¶ 149). With a Criminal History Category II, defendant faced an advisory guideline sentence of life.

The trial judge observed that this was a particularly serious case and one that required incarceration to protect "our most vulnerable from further harm." (SER 529). The court found defendant incapable "of restraining" himself. (SER 530).

17

To address these and other relevant statutory concerns, the court imposed a combined 600-month sentence on all counts. The breakdown included 180-month sentences on Counts 1-8, with the sentences on Counts 2, 7 and 8 to run consecutively to each other and to the sentence defendant is now serving for his Washington County convictions. Count 6, in which the jury concluded defendant has attempted to produce child pornography by coercing N.S. to produce sexually explicit photos of herself, received a 180-month sentence to run concurrently with his state sentences. Count 9 (the possession conviction) received an 84-month concurrent term.

This appeal, challenging the viability of Counts 1 and 4-9 (but not Counts 2 and 6) followed.

## SUMMARY OF ARGUMENT

Defendant took naked photographs of children either without their knowledge and/or without their consent. In several instances, defendant photographed the children while sexually fondling them or he sexually molested them in conjunction with or in addition to taking pictures. Following this Court's precedent, the district court considered several factors when it determined that sufficient evidence supported the jury's verdict finding defendant produced or attempted to produce child pornography under the "lascivious display" element of the relevant statute. The factors that the district court considered were, without exception, the same factors

defendant urged the court to consider. There was no error because the trial judge applied this Court's law faithfully. And even if this Court were to find error, it was either invited or not plain.

One of the relevant factors in assessing whether an image constitutes a lascivious exhibition is, appropriately, whether the image would elicit a sexual response in the viewer (in this case, defendant). Without objection, the government introduced ample evidence that defendant took or intended to take photographs of naked children specifically so he could use the images for his own sexual gratification. Defendant was not a doting parent who merely took photos of his own child in a bathtub. Defendant sexually fondled two of his own sons' friends when they were 10-12 years old, he raped a 12-year old girl staying with him while her family was homeless, and he fondled and sexually abused young boys when he traveled to the Philippines. He committed these sexual acts against children at the same time that he also either surreptitiously or overtly took their photographs without their consent. Defendant's interest in the children was unquestionably sexual, and the judge and jury properly considered this factual context in concluding that defendant either produced or attempted to produce child pornography.

Moreover, defendant offered the children money, cell phones, digital cameras, candy, and clothes, and he used those gifts to obtain leverage to secure their naked photos. When the children asked for more, defendant told them they had to do

something for him; that "something" was taking naked photos of themselves.

Extortion is not generally associated with images that are innocent or artistic.   Both

the court and jury could fairly infer from defendant's actions that he intended to

entice the children into capturing their naked images to satisfy his own sexual desires.

And his repeated entreaties to the children or, (relative to the Filipino victims) their

adult intermediary, more than satisfied the substantial step required to support an

attempt charge.   Indeed, H.J.'s mother told defendant she "tried" to take her

daughter's naked picture as she finished her bath, but H.J. refused to cooperate.

There was neither error nor plain error in any of the district court's rulings.

## ARGUMENT

### A.    Standard of Review

Defendant moved for a judgment of acquittal against Counts 4, 5, 7, 8, and 9

(SER 473), but he did not raise any of the arguments he now seeks to raise on appeal.

Defendant argued that the videos involving D.S. and B.S. and the photos defendant

solicited from M.G. and H.J. failed to meet this Court's test for a "lascivious

exhibition," (SER 475), but he never argued that the test itself was flawed.   Most

critically, he never raised a Due Process challenge or proffered an alternative

formulation for the district court to consider.   In fact, defendant sought the very jury

instruction that he now claims was erroneous and a denial of due process.   (ECF No.

112, p.12).   As further proof that he failed to preserve this issue, defendant's

appellate argument—that the sixth *Dost* factor is unconstitutional—applied at trial to Counts 1 and 4-8, yet his Rule 29 motion explicitly omitted Count 1 (the general production count) and Count 6 (related to N.S.). Consequently, his first argument is subject to review for invited error.

Under the invited error doctrine, "an error that is caused by the actions of the complaining party will cause reversal only in the most exceptional situation," where it is necessary "to preserve the integrity of the judicial process or to prevent a miscarriage of justice." *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991) (internal quotation marks and citation omitted). That doctrine "reflects the policy that invited errors are less worthy of consideration than those where the defendant merely fails to object." *United States v. Perez*, 116 F.3d 840, 844 (9th Cir. 1997) (en banc) (internal quotation marks and citation omitted).

Alternatively (at best), his first argument and the related arguments are reviewable for plain error. *United States v. Shields*, 844 F.3d 819, 823 (9th Cir. 2016). "A trial court commits plain error when (1) there is error, (2) that is plain [i.e., "clear and obvious"], and (3) the error affects substantial rights [i.e., "affects the outcome of the proceedings"]." *Id.* (internal citations omitted).

## B. The District Court Properly Applied this Court's "Lascivious Exhibition" Test.

This Court has already rejected defendant's primary argument. The term "lascivious" as used in the child exploitations statutes is not unconstitutionally vague.

*United States v. Wiegand,* 812 F.32 1239, 1243 (9th Cir. 1987). Whether a particular image falls within the statute's prohibition against a "lascivious exhibition" of a child is a "question of fact." *Id.* at 1244. That factual assessment turns on a number of non-exclusive considerations known as the "*Dost*" factors: (1) whether the image's focal point is the child's genitalia or pubic area; (2) whether the image's setting is sexually suggestive; (3) whether the child is depicted in an unnatural pose or is seen wearing age-inappropriate attire; (4) whether the child is clothed (fully or partially) or nude; (5) whether the image suggests sexual coyness; and (6) whether the image is intended to or designed to elicit a sexual response in the viewer. *United States v. Overton,* 573 F.3d 679, 686-89 (9th Cir. 2009), *citing United States v. Dost,* 636 F. Supp. 828, 832 (S.D. Cal. 1986); *see also United States v. Perkins,* 850 F.3d 1109, 1121 (9th Cir. 2017) (applying *Dost* factors to hold that a search warrant failed to establish probable cause).

The *Dost* factors have been embraced in other circuits, too. *See, e.g., United States v. Wells,* 843 F.3d 1251, 1253-54 (10th Cir. 2016), *cert. denied,* __ S. Ct. __, 2017 WL 1037293 (U.S. Oct. 2, 2017) (No. 16-8379); *United States v. McCall,* 833 F.3d 560, 563 (5th Cir. 2016), *cert. denied,* 137 S. Ct. 686 (2017); *United States v. Lohse,* 797 F.3d 515, 520-21 (8th Cir.), *cert. denied,* 136 S. Ct. 600 (2015); *United States v. Franz,* 772 F.3d 134, 156-57 (3d Cir. 2014); *United States v. Hodge,* 805 F.3d 675, 680 (6th Cir. 2015). And courts have repeatedly recognized, as the district court did in this case, that the

factors are non-exclusive and that the fact-finder's determination "should be based on the overall content of the image." (SER 481-482). Further, this Court has emphasized the "subjective" nature of the inquiry. *Perkins,* 850 F.3d at 1118. And that subjective test, in the jury trial context, focuses on the intent of the image's creator: "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." *Wiegand,* 812 F.2d 1244. The relevant question is not whether a child's parent might consider the image of his or her own child to constitute a lascivious display, but instead whether the image was designed to "arouse or satisfy the sexual cravings of a voyeur." *Id.*

The district court applied the *Dost* factors and considered all of the trial testimony when it denied defendant's motion for a judgment of acquittal as to Counts 4-5 and 7-8. As to Counts 4 and 5, defendant unquestionably wanted naked photos of M.G. and H.J. (factor 4). He specified, "no clothes pictures," "front and back and no shy." He promised that the photos were for his eyes only, and he offered money and gifts in return. Although this latter factor is not part of the *Dost* list, it is unquestionably a relevant circumstance for the images' purpose. The images he sought had value *to him* because he was willing to pay for them; without them, he was unwilling to continue financially supporting Jumao-as or the girls.

As to Counts 7 and 8, defendant just as plainly attempted to capture lascivious

videos of B.S. and D.S. with the video camera hidden in his bathroom wall. The boys are completely naked (factor 4), and the focal point of the images is their torsos and genitalia (factor 1). And bathrooms are sexually suggestive settings because they play upon common sexual fantasies.

Indeed, several courts confronted with the issue of hidden bathroom cameras that capture images of naked children have noted that juries may fairly conclude that bathrooms are a "sexually suggestive setting" because "showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film." *Wells,* 843 F.3d at 1256, *citing United States v. Larkin,* 629 F.3d 177, 183 (3d Cir. 2010). And these courts have affirmed convictions based on comparable evidence to that supporting the D.S. and B.S. videos recovered from defendant's hidden wall camera. *Wells,* 843 F.3d at 1256-57; see also *McCall,* 833 F.3d 564 n. 5 (explaining in a hidden bathroom camera case that there was "no question that the defendant attempted to produce a depiction that met the statutory standard."); *Hodge,* 805 F.3d 680 (explaining that bathroom videos were relevant conduct to a federal child pornography attempt crime).

The trial court and jury also fairly considered defendant's sexual interest in children when assessing whether the images or hoped-for images were designed to elicit defendant's sexual response. To hold, as defendant suggests, that the image be viewed without this lens would yield an unworkable result.

24

For example, if a parent were charged with producing child pornography, excising the subjective component from the lascivious exhibition test altogether would preclude that defendant from offering the absence of sexual activity involving children. The defense would be irrelevant if the fact-finder were limited to the image alone. And reading subjective intent out of a criminal statute altogether makes no sense. Considering defendant's sexual interest in children is, however, consistent with the approach taken by this Court in *Wiegand,* and it is consistent with an approach that is now widely accepted within the circuits.

Considering defendant's intent was also unavoidable because the government charged each 2251(a) count as an actual or attempted production. Defendant does not suggest, nor can he, that his subjective intent was irrelevant to the attempt aspect of the charges. To prove an attempt, the government must establish that he intended to "advance a criminal purpose." *United States v. Goetzke,* 494 F.3d 1231, 1236 (9th Cir. 2007).

Moreover, the government was never required to prove that any of the images or sought-after images actually constituted a lascivious exhibition to sustain the charges in Counts 4-5 and 7-8. Section 2251 prohibits "the inducement of children into sexual conduct for the purpose of creating visual depictions of that conduct." *United States v. Smith*, 795 F.2d 841, 845 (9th Cir. 1986). A completed visual depiction is not required; § 2251 "does not require the *actual* production of a visual depiction,

merely the enticement of minors '*for the purpose of producing*' a visual depiction of sexually explicit conduct." *Smith*, 795 F.2d at 846 (emphasis in original).

Defendant argues without citing any authority that the *Dost* test is contrary to legislative intent. And his Hail Mary pass to the canon of constitutional avoidance falls short because there is nothing vague about the statute. *See United States v. Finazzo,* 841 F.3d 816, 819 (9th Cir. 2016) (rejecting a defendant's reliance on the rule of lenity and the canon of constitutional avoidance because there was nothing ambiguous about the statute as applied to him). Nor was the court's application of the statute to the facts in this case an unfair surprise: defendant was unquestionably on notice that his actions were criminal. His victims testified that defendant told them not to tell anyone; he frightened D.S., B.S., and N.S., and he paid off his victims and intended victims in the Philippines with pesos, candy, and school supplies. The fact that the Filipino children were poor and lived thousands of miles away also afforded him a measure of security. But there is no question he knew what he did and what he attempted to do was illegal. He did not encrypt his hard drives and install sophisticated wiping software for nothing.[6]

In sum, the district court did not err, much less plainly err, when it used this

---

[6] At trial, during his cross-examination of a government computer forensic witness, defendant suggested that a person could encrypt his computers for a variety of legitimate reasons, such as keeping sensitive tax or financial materials secure. (SER 389). However, defendant's tax records, financial records, and divorce materials were found in unencrypted drives. (SER 396-397).

Court's *Dost* factors to deny defendant's Rule 29 motion.    Any error was invited, and defendant fails to satisfy this Court's high burden for establishing that his own invited error resulted in a fundamental miscarriage of justice.    As the district court observed at sentencing, defendant received a fair trial.    His convictions on Counts 4–8 should be affirmed.

### C.    Defendant Took Substantial Steps Towards Producing Child Pornography Using M.G. and H.J. (Counts 4 & 5).

To establish an attempt, the government must prove that defendant intended to commit the charged offense, and that he took a substantial step toward its commission.    *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).[7]    A

---

[7] A conviction under 18 U.S.C. § 2251(a) requires that the government prove the following:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e),

> if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce . . or mailed,

> if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer,

> or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

*United States v. Sheldon*, 755 F.3d 1047, 1049–50 (9th Cir. 2014).

27

defendant's actions "must go beyond mere preparation, and must corroborate strongly the firmness of the defendant's criminal intent." *Id.* (internal quotation marks and citation omitted). The substantial step must demonstrate "a true commitment towards completing the crime," and that "the crime will take place unless interrupted by independent circumstances." *Id.* (internal quotation marks and citations omitted).[8]

Repeated pleas to children to produce "private" naked photos for his own "personal" use constitute precisely the type of substantial steps that satisfy the attempt statute. For example, when a defendant initiated contact with a child, described the sex acts he wanted to perform on him and proposed a rendezvous location, he crossed the line from "mere preparation" to attempted enticement. *Goetzke*, 494 F.3d at 1237.

When assessing the sufficiency of the evidence to sustain convictions, this Court reviews the evidence *de novo* and in the "light most favorable to the prosecution." *United States v. Ubaldo,* 859 F.3d 690, 699 (9th Cir. 2017). Evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Id.*

Defendant repeatedly urged Jumoa-as to take photos of her young daughter

---

[8] The district court instructed the jury using substantially similar language. (SER 477-478).

28

and her daughter's even younger friend. M.G. was only 8 years old, and H.J. was either 10 or 11 at the time. When Jumoa-as told defendant that H.J. was shy and reluctant because she was "almost a teenager," defendant doubled-down: he made clear that his continued financial support depended on her ability to produce those photos. And he made clear that only naked photos—"front and back, no shy"—would do. Moreover, the fact that Jumoa-as tried to take the photos shows just how far this crime advanced. Defendant's repeated entreaties and the fact that he extorted these financially vulnerable people more than satisfies the substantial step requirement.

Defendant's argument that the images he sought were just "nude selfies" should be rejected for the reasons addressed in the prior section. Defendant wanted the photos of M.G. and H.J. for his own sexual gratification; he was neither a doctor nor a sociologist and nothing about naked photos would have revealed the children's health any more than pictures of them clothed.

Finally, to the extent defendant seeks a new trial for Counts 1 and 9 because of alleged prejudicial spillover from the errors undergirding the other counts, there was no error relative to the other counts and all counts were properly joined for trial. As with his other claims, defendant never sought to sever the counts, and all of the evidence admitted to sustain Counts 1 and 9 was equally admissible for Counts 4-5 and 7-8.

The trial judge correctly denied defendant's Rule 29 motion against these counts, and ample evidence supports the jury's verdict.

## CONCLUSION

This Court should affirm defendant's judgment.

DATED this 16th day of October 2017.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
District of Oregon

*s/Kelly A. Zusman*
KELLY A. ZUSMAN
Assistant U.S. Attorney

## STATEMENT OF RELATED CASES

Pursuant to Rule 28-2.6, Rules of the United States Court of Appeals for the Ninth Circuit, defendant filed a notice of appeal from the district court's restitution order, which is Circuit Case No. 17-30167.

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-30213

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [7002] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [          ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

| Signature of Attorney or Unrepresented Litigant | s/Kelly A. Zusman | Date | October 16, 2017 |

("s/" plus typed name is acceptable for electronically-filed documents)

| 9th Circuit Case Number(s) | 16-30213 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Oct 16, 2017 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)     s/Kelly A. Zusman

*************************************************************************

## CERTIFICATE OF SERVICE
## When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)                   .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)