No. 16-30213

———————————————

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN DOUGLAS ROCKETT,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the District of Oregon
Portland Division
No. 3:13-cr-00557-SI
The Honorable Michael H. Simon, Judge

———————————————

FURTHER EXCERPTS OF RECORD

———————————————

Stephen R. Sady
Chief Deputy Federal Public Defender
Lisa Ma
Research and Writing Attorney
101 SW Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123

Attorneys for Defendant-Appellant

## TABLE OF CONTENTS

**Page**

Defendant's Trial Memorandum (CR 91) ................................................................ 1

Excerpt of Jury Trial Transcript Volume 1 (May 16, 2016).................................... 8

Excerpt of Jury Trial Transcript Volume 4 (May 19, 2016)................................... 13

Excerpt of Jury Trial Transcript Volume 5 (May 20, 2016).................................. 17

Excerpt of Jury Trial Transcript Volume 7 (May 24, 2016).................................. 20

Certificate of Service

i

CHELSEA B. PAYMENT, OSB #141125
ANDREW D. COIT, OSB #972378
Cohen & Coit, PC
9200 SE Sunnybrook Ave, Suite 430
Clackamas, OR 97015
Ph: 503-231-3419
Fax: 503-231-3420
Chelsea@cohencoit.com
Andrew@cohencoit.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>  vs.<br><br>STEVEN DOUGLAS ROCKETT,<br><br>           Defendant. | Case No.: 3:13-CR-00557-SI<br><br>DEFENDANT'S TRIAL MEMORANDUM |

COMES NOW defendant, STEVEN DOUGLAS ROCKETT, by and through his

attorneys, Chelsea B. Payment and Andrew D. Coit, of Cohen & Coit P.C., and submits the

following trial memorandum:

STATEMENT OF THE CASE

  Steven Rockett is charged with two counts of International Travel and Engaging in Illicit

Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(c) and (e), six counts of

Producing of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), and one count of

Possession of Child Pornography in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2).

  Mr. Rockett was indicted in this case on November 19, 2013.  Mr. Rockett stood trial in

Washington County Circuit Court for the State of Oregon on February 18, 2015 and was

PAGE 1—DEFENDANT'S TRIAL MEMORANDUM

convicted of numerous offenses relating to sexual abuse of children.  State of Oregon vs. Steven

Douglas Rockett, Washington County Case Numbers: C131929CR, and C132673CR.  These

cases are on direct appeal.  Mr. Rockett is currently in custody serving a fifty-two (52) year

sentence in the Oregon Department of Corrections.

The case is scheduled for a jury trial to begin on May 16, 2016.  Defendant anticipates a

seven-day trial.

OVERVIEW OF PRIMARY TESTIMONY

Defense expert, Joel Brillhart, C.F.C.E.  A copy of Mr. Brillhart's C.V. has been

submitted as Defendant's Exhibit 115.  Mr. Brillhart examined the digital evidence seized from

defendant's residence at the Northwest Regional Computer Forensics Laboratory (NWRCFL).

Mr. Brillhart is expected to testify regarding his analysis of defendant's electronic devices.

Potential areas of Mr. Brillhart's testimony are outlined in more detail in defendant's Notice of

Expert Witnesses and in Defendant's Exhibits 113 and 114, which were submitted under seal.

Defense expert, Wendy Bourg, Ph.D.  Dr. Bourg's C.V. has been submitted as

Defendant's Exhibit 117. Dr. Bourg examined the forensic interviews conducted by FBI agents

in the Philippines. Dr. Bourg is expected to testify about the effect of direct inducements offered

to witnesses in exchange for their testimony in this case.  Dr. Bourg also examined the local

investigation pertaining to defendant. Dr. Bourg testified at length in State of Oregon vs. Steven

Rockett, and her testimony has been submitted under seal as Defendant's Exhibit 116. Dr. Bourg

will testify in substantially similar fashion.

Erika Cox, is a former Washington County Sheriff's Office detective.  Ms. Cox was the

lead detective in the state case, until she resigned in Fall of 2014. Ms. Cox took defendant's

statement and the statements of some of the government's witnesses.  Former Detective Cox is

PAGE 2—DEFENDANT'S TRIAL MEMORANDUM

expected to testify about these statements.  Former Detective Cox is also expected to testify about circumstances that occurred during the investigation of this case that eventually lead to her resignation from the Washington County Sheriff's Office.  Defendant believes this gave former Detective Cox motive to slant the investigation against defendant, and/or testify favorably for the government. Former Detective Cox testified in State of Oregon vs. Steven Rockett, and her testimony has been submitted under seal as Defendant's Exhibits 102-105.  Additionally, the Internal Affairs investigation file pertaining to former Detective Cox's alleged misconduct has been submitted under seal as Defendant's Exhibit 101.

Doug Cook, is a former Washington County Sheriff's Office Detective.  Mr. Cook is expected to testify about circumstances that occurred during the investigation of this case that eventually lead to former Detective Cox's resignation.  Former Detective Cook testified in State of Oregon vs. Steven Rockett, and his testimony has been submitted as Defendant's Exhibit 106.

Detective Robert Rookhuyzen of the Washington County Sheriff's Office.  Detective Rookhuyzen became the lead detective in the state case after former Detective Erika Cox resigned from the Washington County Sheriff's Office.  Detective Rookhuyzen is expected to testify about the circumstances of the investigation of defendant that took place in Oregon. Detective Rookhuyzen is also expected to testify about the circumstances of former Detective Cox's resignation.

Sergeant Ryan Spang of the Washington County Sheriff's Office. Sergeant Spang is expected to testify about circumstances that occurred during the investigation of this case that eventually lead to former Detective Cox's resignation. Sergeant Spang testified in State of Oregon vs. Steven Rockett, and his testimony has been submitted as Defendant's Exhibit 107.

PAGE 3—DEFENDANT'S TRIAL MEMORANDUM

Sergeant Kelly Jones of the Washington County Sheriff's Office, professional standards unit.  Sergeant Jones conducted the Internal Affairs (IA) investigation of former Detective Erika Cox.  Sergeant Jones is expected to testify about the IA investigation of former Detective Cox that occurred during the investigation of this case.  Sergeant Jones testified in <u>State of Oregon vs. Steven Rockett</u>, and his testimony has been submitted as Defendant's Exhibit 108.  The IA investigation file has been submitted as Defendant's Exhibit 101.

Undersheriff Jeff Mori of the Washington County Sheriff's Office.  Undersheriff Mori is expected to testify about the concerns he had regarding former Detective Erika Cox and the circumstances that occurred during the investigation of this case that eventually lead to former Detective Cox's resignation. Undersheriff Mori testified in <u>State of Oregon vs. Steven Rockett</u>, and his testimony has been submitted as Defendant's Exhibit 109.

Detective John Shipley of the Washington County Sheriff's Office.  Detective Shipley was initially the lead investigator in the state case, and again became the lead investigator during the state trial after Detective Rookhuyzen went on vacation. Detective Shipley is expected to testify about the investigation into the allegations against defendant pertaining to alleged victim, N.S.

Christine Rockett is defendant's ex-wife.  Ms. Rockett is expected to testify about defendant's and her travels to the Philippines. Ms. Rockett is also expected to testify that the FBI has been placing tremendous pressure on individuals to testify against defendant.

Verne Hoyer conducted private investigation on behalf of defendant in Oregon.  Mr. Hoyer may be called as a witness and is expected to testify about the investigation he conducted in Oregon.

PAGE 4—DEFENDANT'S TRIAL MEMORANDUM

Further Excerpts of Record 4

Dave Panter conducted private investigation on behalf of defendant in the Philippines.

Mr. Panter may be called as a witness and is expected to testify about the investigation he

conducted in the Philippines.

PROPOSED JURY INSTRUCTIONS

Defendant filed in a separate pleading defendant's proposed jury instructions.

MOTIONS *IN LIMINE*

Defendant has filed in four separate pleadings, the following Motions *in Limine*:

1.   Defendant's Motion *in Limine* to Exclude Evidence Recovered from
Unallocated Space ("Cache"), Deleted Trash, and RAR Files;

2.   Defendant's Motion i*n Limine* to Exclude Defendant's Prior Convictions
and Prior Bad Act Evidence;

3.   Defendant's Motion *in Limine* to Admit Evidence of Law Enforcement
Misconduct; and

4.   Defendant's Motion *in Limine* to Limit Materials Exhibited to the Jury.

JUDGMENT OF ACQUITTAL

Defendant anticipates the need to move for judgment of acquittal under Rule 29 of the

Federal Rules of Criminal Procedure at the close of the government's case, at the conclusion of

evidence and/or after the verdict is rendered. Defendant anticipates many, if not all of the images

offered in its case in chief will <u>not</u> depict minors engaged in sexually explicit conduct.  Under

defendant's current understanding of the evidence, the only possible manner these materials

could fit into the statutory definition of "sexually explicit conduct" would be under 18 U.S.C.

2255(2)(E) ("lascivious exhibition of the genital or pubic area of any person").

STIPULATIONS

PAGE 5—DEFENDANT'S TRIAL MEMORANDUM

Defendant and the government have stipulated to admissibility of statements made by defendant to law enforcement on or about August 23, 2013 as provided in the Stipulation Regarding Admissibility of Defendant's Statements, ECF 49.

CONCLUSION

Defendant reserves the right to call additional witnesses, file additional motions *in limine* and jury instructions based on the government's trial filings, evidence adduced at trial, and additional legal or factual issues that may arise.

RESPECTFULLY SUBMITTED this 2nd day of May, 2016.

*/s/ CHELSEA B. PAYMENT*
Chelsea B. Payment, OSB #141125
Of Attorneys for Defendant

PAGE 6—DEFENDANT'S TRIAL MEMORANDUM

**Certificate of Service**

I hereby certify that on the above-mentioned date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Paul T. Maloney
Special Prosecutor U.S. Attorney's Office
150 N 1st Ave, Suite 300 MS 40
Hillsboro, OR 97124
paul_maloney@co.washington.or.us

Gary Sussman
US Attorney's Office
District of Oregon
1000 SW 3rd Ave., Ste. 600
Portland, OR 97204
Gary.Sussman@usdoj.gov

/s/ CHELSEA B. PAYMENT
Chelsea B. Payment, OSB #141125
Of Attorneys for Defendant
Cohen & Coit, PC
9200 SE Sunnybrook Ave, Suite 430
Clackamas, OR  97015
Ph:     503-231-3419
Fax:    503-231-3420
chelsea@cohencoit.com

PAGE 7—DEFENDANT'S TRIAL MEMORANDUM

1                IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF OREGON

3

4   UNITED STATES OF AMERICA,        )
                                     )
5            Plaintiff,              )   3:13-cr-00557-SI
                                     )
6       vs.                          )   May 16, 2016
                                     )
7   STEVEN DOUGLAS ROCKETT,          )   Portland, Oregon
                                     )
8            Defendant.              )

9

10                   (Jury Trial – Volume 1)

11                  TRANSCRIPT OF PROCEEDINGS

12          BEFORE THE HONORABLE MICHAEL H. SIMON

13            UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

Opening Statement

1    to see from that camera from the Philippines is Mr. Rockett

2    engaging in consensual homosexual oral sex with an adult male.

3    That's it.  That's the sexually explicit conduct you are going

4    to see on that.

5           I am going to address the jury over here.  Can

6    everyone hear me okay?  Because I want to show you some of

7    these pictures, because, again, they are critical to the

8    defense.  These are still shots that the Government made and

9    provided to the defense for purposes of this case.  I am going

10   to show them to you by person.

11          Okay.  That's Mr. Rockett and J██████ C██████, whose

12   current age is about 26.  He was 19 or 20 when that photo was

13   taken.

14          J██████ C██████, 19 or 20 when that photo was taken.

15          J██████ C██████, 19 or 20 when that photo was taken.

16          Ditto.

17          Steve Rockett in the shower with J██████ C██████,

18   taken when J██████ C██████ was 19 or 20.

19          Steve Rockett apparently receiving oral sex from

20   J██████ C██████ in the shower apparently when J██████ C██████

21   was 19 or 20.

22          THE COURT:  I don't mean to interrupt, but I think

23   you have these photographs 90 degrees off.  They are on the

24   side.

25          MR. COIT:  I apologize.  I am going to flip through

Further Excerpts of Record 9

M. Smith - X

1   correct?

2   A    Correct.

3   Q    One of those images, the kid in the back of the bed

4   playing on the Game Boy, that's J███████ O██████, according to

5   your notes, correct?

6   A    Yes.

7   Q    You are aware that J███████ O██████'s date of birth is

8   1991, aren't you, as part of your investigation?

9   A    I don't recall, sir, if I ever got his date of birth

10  nailed down.

11  Q    Okay.  You are aware that he is about 25 years old now,

12  aren't you?

13  A    I believe he is in his 20s, yes, sir.

14  Q    The investigation continued the next day -- the

15  investigation continued on the 27th, and you went to some

16  elementary schools to interview some witnesses, didn't you?

17  A    Yes.

18  Q    You went to ██████ Elementary School to talk to

19  ███████████ Rockett, correct?

20  A    Correct.

21  Q    You went to ████ ██████ Middle School to talk to ██████████

22  Rockett, correct?

23  A    Yes.

24  Q    Then you went to ██████████ ██████ Elementary and talked to

25  children both D.S. and B.S., correct?

Further Excerpts of Record 10

M. Smith - X

1   A    Yes.

2   Q    And D.S. and B.S., those are friends of Mr. Rockett's

3   children, ███████ and ████████████ aren't they?

4   A    Yes.

5   Q    At this point in time nothing that was disclosed to you by

6   either ███████████ Rockett, ████████ Rockett -- nothing that

7   was said to you by either C███████ Rockett, J████████

8   Rockett, D.S., or B.S. caused you to formulate probable cause

9   to arrest Mr. Rockett with respect to any of those four

10  individuals, correct?

11  A    At that time, correct.

12  Q    So no arrest was made of Mr. Rockett pertaining to any of

13  those individuals following the interviews that you conducted

14  of those children, correct?

15  A    Correct.

16  Q    It is normal practice of law enforcement when there is a

17  child abuse disclosure made at a particular time to take quick

18  action; isn't that true?

19  A    Yes.

20  Q    But again, no action was taken following these interviews,

21  was there?

22  A    No.

23  Q    I want to fast forward you please, Sergeant Smith, to the

24  date of March 1st, 2013.  Was that a day that you worked on

25  Mr. Rockett's case?  If you look at -- I don't know if you have

D. Biehn - D

1   move on to your next question?

2           MR. MALONEY:  My response would be rather lengthy.

3           THE COURT:  Let's move on to another topic, and we

4   will talk about your response at another time.

5           MR. MALONEY:  Thank you.

6   BY MR. MALONEY:

7   Q    Okay.  Let's go to -- back to Exhibit 27.  If you can take

8   the displays down.

9   BY MR. MALONEY:

10  Q    I think we were looking at J██████ O████ .

11  A    That's a photo of J██████ O████ at his residence.

12  Q    And the next photo in the series.  Who is that?

13  A    That's J██████ B██████ , also known as Saddam.

14  Q    Was he identified in Exhibit 1?

15  A    He was.

16  Q    Next.  Who is that?

17  A    V.P.

18  Q    And why did you speak to him?

19  A    Also as someone who had come up in my investigation.

20  Q    Next image.  The images in Government 27, are those all a

21  fair and accurate documentation of the people that you met in

22  the Philippines?

23  A    Absolutely, yes.

24          MR. MALONEY:  I offer 27.

25          THE COURT:  Any objection?

1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF OREGON

3

4    UNITED STATES OF AMERICA,        )
                                      )
5              Plaintiff,             )   3:13-cr-00557-SI
                                      )
6        vs.                          )   May 19, 2016
                                      )
7    STEVEN DOUGLAS ROCKETT,          )   Portland, Oregon
                                      )
8              Defendant.             )

9

10                       (Jury Trial – Volume 4)

11                     TRANSCRIPT OF PROCEEDINGS

12              BEFORE THE HONORABLE MICHAEL H. SIMON

13                UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

D. Biehn - X

1   Q    Did you ever meet J██████ O█████ personally?

2   A    I did.

3   Q    Did he appear to look consistent with anyone in the video?

4   Did he look like anybody in the video?

5   A    Which video?

6   Q    The video of the camera footage from the Philippines

7   bathroom?

8   A    There were several different videos.

9   Q    Did you see J██████ O█████ in any of them?

10  A    He saw himself, yes.

11  Q    Is one of the places that J█████ O████ appears in that

12  video in the shower sequence where Mr. Rockett is receiving

13  oral sex?

14  A    I am going to refer to the picture that I showed

15  Mr. O████.

16  Q    Please.

17  A    The photographs that I used were one where he appears to

18  be in pain and holding his buttocks.  He identified himself in

19  that photograph.  And then the other photograph, the curtain is

20  drawn.  I can see a man's arm, but I can't see what's occurring

21  in that photograph.

22  Q    That's in the same sequence, correct?

23  A    Yes.  But I didn't show him the entire sequence.  I just

24  showed him some stills.

25  Q    So the buttocks sequence is in the same sequence as the

D. Biehn - X

1  oral sex/shower sequence, correct?

2  A    Again, I haven't seen the sequence in whole.  I used

3  stills.  So I don't know what is occurring behind that drawn

4  curtain.  I can see a white arm, and I can see J███████ O█████.

5        MR. COIT:  Your Honor, may I please examine whatever

6  photos the witness is referring to.

7        THE COURT:  You may.

8  BY MR. COIT:

9  Q    Can you bring Exhibit 5 up, please.  Thank you,

10 Agent Biehn.  Special Agent Biehn, is the person in the three

11 photos that you just showed me, is that person J███████ O█████?

12 A    J███████ O█████ identified himself in these photos.

13 Q    In all three of those?

14 A    Yes.

15       MR. COIT:  Your Honor, I would move to offer those

16 photos as Exhibit 123, the sanitized version.

17       THE COURT:  We can deal with the logistics of it.

18       First, is there an objection?

19       MR. MALONEY:  No objection.

20       THE COURT:  All right.  Exhibit 123 will be received.

21 We will figure out the logistics of copying those at a break.

22 BY MR. COIT:

23 Q    When you met with J███████ O█████, it was approximately 18

24 months ago, correct?

25 A    October 8th, 2014.

D. Biehn - X

1    Q    And he was around 24 years old at that time, wasn't he?

2    A    I believe so.

3            MR. COIT:  Has Exhibit 6 been received by the Court?

4    May I inquire?

5            THE CLERK:  Yes.

6    BY MR. COIT:

7    Q    Agent Biehn, I'm going to show you some photos.  Let's

8    just make sure -- I am going to turn the juror monitor on as

9    well for this one, because this is an exhibit that has been

10   received.  This are three stills from Government's Exhibit 6,

11   okay.

12           THE COURT:  Members of the jury, are your monitors

13   on?  Thank you.

14           You may proceed.

15   BY MR. COIT:

16   Q    Can you see that photo, Agent Biehn?

17   A    Yes.

18   Q    That's a photo you took?

19   A    Yes.

20   Q    That's a photo of an Internet cafe?

21   A    Yes.

22   Q    Is that an inside or the outside of the Internet cafe?

23   A    That was the inside of the Internet cafe.

24   Q    Then this would be the outside Internet, I guess, cafe for

25   lack of a better term?

1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF OREGON

3

4   UNITED STATES OF AMERICA,        )
                                     )
5            Plaintiff,              )   3:13-cr-00557-SI
                                     )
6       vs.                          )   May 20, 2016
                                     )
7   STEVEN DOUGLAS ROCKETT,          )   Portland, Oregon
                                     )
8            Defendant.              )

9

10                       (Jury Trial - Volume 5)

11                      TRANSCRIPT OF PROCEEDINGS

12              BEFORE THE HONORABLE MICHAEL H. SIMON

13               UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

C. Jumoa-as - D

1   Q    Did you ever use his Facebook profile?

2   A    No.

3   Q    Did you ever use his Facebook profile to communicate with

4   N██████ S████████?

5   A    No.

6   Q    Did you ever use his Facebook to communicate with a child

7   named M████████ in the Philippines?

8   A    No.

9   Q    Do you know M████████'s mother --

10  A    No.

11  Q    -- a woman named M████████ G████████ from the Philippines?

12  A    I know M████████, but I don't know her daughter.

13  Q    Do you get along with M████████?

14  A    I don't know if I get along with her.

15  Q    Do you know her Facebook information?

16  A    No.  We are not even friends on Facebook.

17  Q    What part of Cebu City are you from?

18  A    Cabitan.

19  Q    Where is that?

20  A    Cebu.

21  Q    Is that in Barangay Luz?

22  A    Yes.

23  Q    That's where all these people are from?

24  A    I think so.

25  Q    J████████ O████████.  Do you know him?

C. Jumoa-as - D

1    A    He is my cousin.

2    Q    How old is he today, if you know?

3    A    I don't know.  Maybe 26 or 27.

4    Q    Younger than you?

5    A    Yes.

6    Q    Did you grow up with him?

7    A    We grow up in the neighborhood.

8    Q    Were there times that he would spend with your husband,

9    Steven Rockett, when you would visit in the Philippines?

10   A    I don't remember that he did.  I don't remember.  But all

11   I know is that we are taking a lot of kids a lot of time to the

12   mall to eat, to the beach, everywhere.

13   Q    Whose idea was it to take a lot of kids those places?

14   A    Steven.

15   Q    Whose money was spent when you went to places with all

16   those children?

17   A    His.

18   Q    Steven's?

19   A    Steven's money.

20   Q    Who brought all those kids to the hotel rooms?

21   A    The kids would ask Steven to go with him.  They were

22   always waiting outside my house waiting for Steven.  They will

23   have signal -- me go with you to eat or go to the swimming

24   pool.  They want to go swimming.  That's all -- every time --

25   every time we go there, that's all they ask from Steven.  They

1                IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF OREGON

3

4  UNITED STATES OF AMERICA,    )
                            )

5          Plaintiff,    )  3:13-cr-00557-SI
                            )

6     vs.                )  May 24, 2016
                            )

7  STEVEN DOUGLAS ROCKETT,    )  Portland, Oregon
                            )

8         Defendant.    )

9

10                  (Jury Trial - Volume 7)

11                TRANSCRIPT OF PROCEEDINGS

12            BEFORE THE HONORABLE MICHAEL H. SIMON

13             UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

Closing Statement

1    question that those photographs were lascivious exhibitions of

2    the genitals of those children?  Is there any question that

3    Steven Rockett knowingly possessed child pornography?

4              Members of the jury, throughout the trial we have

5    heard a number of different theories and suggestions from the

6    defense, ways that they tried to explain away the Government's

7    evidence.  Those theories don't hold water.  They suggest, for

8    example, that hidden cameras, what he calls "nanny cams" are

9    commonplace, and there are numerous, legitimate uses for them.

10   Okay.  But hiding them in a bathroom to capture images of

11   children going in and out of the shower and using the toilet is

12   not a legitimate use.

13             If you want to protect your valuables from theft by

14   using a hidden camera, fine, put the camera where the valuables

15   are.  They are not in the bathroom.

16             Other people, he said, could have used

17   Steven Rockett's Facebook account to communicate with people.

18   Well, I suppose it is a possibility, however remote.  But who

19   was it that was communicating with everybody over and over and

20   over again?  It was Steven Rockett.  He was communicating with

21   Charis.  He was communicating with M██████.  He was

22   communicating with N████.  He communicated with G██G██.

23             He suggested it may have even been his ex-wife,

24   Christine, who used his account to communicate with Charis.

25   But how credible is that?  You saw Christine Rockett's

Closing Statement

1   testimony.  You saw her on the stand.  You heard what she said.

2   You heard how she said it.  Christine Rockett/Christine

3   Jumoa-as is not particularly clever, and she is not a

4   particularly convincing liar either.

5        It is strange belief to think that Christine hacked

6   into Steven Rockett's Facebook account and concocted an entire

7   ongoing continual conversation with Charis, just to frame

8   Steven Rockett, and that she communicated with G███ G███ and that

9   she communicated with M███████ and that she communicated with

10  N█████, especially when you consider Steven Rockett's computer

11  knowledge and his level of sophistication.

12       This guy is exceedingly paranoid and vigilant about

13  computer security.  Look at all the different encryption

14  programs he was running.  Look at the disk-wiping systems he

15  used.  Four passwords to get through DriveCrypt.  Four.  Is

16  that the kind of person who is going to allow his ex-wife, with

17  whom he is in a gigantic custody battle, to have access to his

18  Facebook information?  Is that credible?  Does that hold water?

19       Then they told you, "Well, the witnesses from the

20  Philippines, you can't believe them."  You can't believe them

21  because the FBI pressured them, the FBI paid them off, and

22  their testimony and their statements have changed over time.

23       Folks, you heard from Special Agent Biehn, who went

24  down there and interviewed those kids.  You saw what she is

25  like.  She is soft-spoken, a sense of humor.  She described

Closing Statement

1    herself as a "recovering attorney."  She told you how the

2    interviews went.  She described the circumstances under which

3    they were conducted.  There were no threats.  There were no

4    promises.  No raised voices.  No pressure.  No coercion.  She

5    went down there to help to try to identify those children and

6    find out what happened, and that's what she did.

7            She never promised them a payment.  She never

8    promised them anything.  Discussions about payment only

9    happened later, over a year later when the FBI went back to the

10   barangay to try to figure out which witnesses would be willing

11   to come to the United States.  And what were they promised

12   anyway?

13           These people who are so poor and so destitute that

14   most of them didn't even have a birth certificate, let alone a

15   passport, let alone the financial means to travel here.  They

16   wanted to know, are the travel expenses going to be covered?

17   The FBI said, "Yeah, we will cover your travel expenses."

18           Even with those promises of payment for their travel

19   expenses, not all of them came.  Not all of them came.  In

20   fact, M████ T██ ran away.  He ran away from the FBI because he

21   didn't want to come.  So to suggest that the FBI somehow bribed

22   and paid off these witnesses to get them here doesn't hold

23   water.  What happened when they got here?  What happened when

24   they got here?  They had to walk into this courtroom and take

25   that witness stand, with a limited command of English and a

Closing Statement

1    translator assisting them, and they had to go sit in that

2    witness box.  They had to look at you folks, 14 strangers, and

3    tell you what had happened to them.

4              They had to tell you what Mr. Rockett had done to

5    them.  They had to tell you how they'd been exploited and

6    abused by this American.  It wasn't easy.  But they did it.

7    They were uncomfortable, but they were courageous.  Even the

8    oldest of them had tears in his eyes when he described what

9    happened.

10             But they told you what they knew.  They told you the

11   things that they knew.  They told you the things they didn't

12   know.  They told you what they remembered.  They told you the

13   things that they didn't remember.  In the end, it is up to you

14   to determine how much weight to give to their testimony.  It is

15   up to you to determine whether they were credible witnesses.

16   You saw them.  You heard them.  You make the call.

17             What were they paid, again, for their appearance

18   here?  Well, there was the $40-a-day witness appearance fee,

19   the same fee that is paid to all witnesses, even witnesses

20   subpoenaed by the defendant.  They got a $64 per diem payment

21   for meals and incidental expenses, the same payment that any

22   witness who travels here from out of town would receive, even

23   witnesses subpoenaed by a defendant.  And that's it.

24             They got no extra payment.  They got nothing other

25   than the witness fee and the per diem, and we covered the cost

Closing Statement

1    of their transportation.  We did help them get birth

2    certificates.  They couldn't have come without them.  We did

3    help them get passports.  They couldn't have come without them.

4    We needed them here to tell you what happened in the

5    Philippines.  We couldn't have done that without them.

6           But were they paid for their testimony?  Were they

7    bribed to be here?  No.  They came here to tell you what

8    happened, and that's what they did.  And this was no trip to

9    Disneyland, folks.  This was no vacation.  They weren't here on

10   a visa.  They weren't free to travel.  They were under the

11   FBI's auspices the whole time they were here.  Everywhere they

12   went there was one at least one FBI agent with them -- even at

13   their hotel.  When they went out for meals, when they went to

14   the mall, when they came here to testify, they traveled with

15   the FBI.  When they were done testifying, they went right back

16   to the Philippines.

17          Then a big issue in this case was the dates on the

18   videos from the hidden camera, or at least the defense wants it

19   to be a big deal.  But when you sort through all the smoke and

20   mirrors, it really doesn't mean much of anything at all.  Their

21   whole argument hinges on several fundamental assumptions, one

22   piled on top of the other.

23          Assumption No. 1:  The June 2008 dates on the files

24   that everybody has been referring to as "the factory videos,"

25   that date has to be accurate.  Nobody could tell us that that

Closing Statement

1   date was accurate.  Nobody knows.

2       Assumption No. 2.  All of the videos had to have been

3   produced by the same device on the same SD card.  We don't know

4   that either, because, remember, all of those files were

5   deleted.  They were in unallocated space.  There were no EXIF

6   data on any of them, so there was no way to determine what

7   device made any of those videos.  Nobody can say which hidden

8   camera of the three that we recovered from Mr. Rockett was used

9   to make any of those videos.

10      Nobody can say where those factory videos were made.

11  Nobody can say definitively when those factory videos were

12  made.  Nobody can say if they were put on that SD card before

13  the rest of the videos that were on there.  Nobody can say

14  that.  When all of those assumptions they are making tumble

15  down, the entire theory about the dates collapse.

16      But we do know a few things.  We do know, for

17  example, that there were two different bathrooms shown in those

18  videos.  We do know that in 2007 Steven Rockett stayed at the

19  Park Lane Hotel.  We do not know where we stayed for sure

20  during 2010, but wouldn't it make sense that if some of the

21  videos were shot in one bathroom and some were shot in another

22  that they came from different trips?

23      J___ D___ told you he was with Steven Rockett only

24  once -- only once -- and that was in 2007 when he was about 12

25  years old.  You saw J___ D___ in the video.  You saw how old he

Further Excerpts of Record 26

Closing Statement

1   looks.  He looks like a 12-year-old, not like a 15- or

2   16-year-old.

3           Remember also that the shot of J██ D██ in the

4   bathroom -- the video of him in the bathroom with Steven

5   Rockett appeared to be the very same bathroom in which

6   Steven Rockett was receiving oral sex from J██████ O█████ --

7   same camera angle, same view, same lighting, same view, same

8   background, same trip.  And if that trip was in 2007,

9   J██████ O█████ was only 16 years old.  So when Mr. Rockett

10  told you in his opening that was consensual homosexual sex with

11  a consenting adult, no.  It was sex with a minor.

12          We told you at the outset of this case what we were

13  going to prove, and we proved it.  We proved that Steven

14  Rockett produced or attempted to produce child pornography in

15  the Philippines fully intending to bring it back here to the

16  United States, and he did so.

17          We proved that he traveled to the Philippines in 2007

18  and, while there, engaged in illicit sexual conduct with a

19  minor.  We proved that he attempted to produce child

20  pornography using M██████ and H███████.  We proved that he

21  attempted to do so with N████ and that he produced or attempted

22  to produce child pornography with B█████ and D███.  And

23  finally, we proved that he knowingly possessed child

24  pornography in his Forest Grove home in August of 2013.

25          In short, members of the jury, we have proved that

Closing Statement

1    Steven Rockett is guilty, guilty of each of the remaining
2    counts of the indictment, Counts 1, 2, 4, 5, 6, 7, 8, and 9,
3    and that is the verdict that you should return.
4         "Then and now."  Those were the words that
5    Mr. Maloney used right at the beginning of his opening
6    statement.  "Then and now."  And those are the words that I am
7    going to leave you with, "then and now."
8         "Then" Steven Rockett produced child pornography in
9    the Philippines.  "Then" he engaged in illicit sexual conduct
10   with a minor under 16 in the Philippines.  "Then" he produced
11   or attempted can child pornography involving H███████,
12   M████████, N████, B████████, and D████.  And "then" he knowingly
13   possessed child pornography
14        And "now"?  "Now" it is time to hold him accountable
15   for his actions.  "Now" is time to reject his attempts to
16   explain away the Government's evidence and to blame everybody
17   else but himself for what he did.  "Now" it is time to tell him
18   that you cannot produce child pornography in another country
19   and bring it back to the United States.  "Now" it is time to
20   tell him that it is unacceptable for an American to travel
21   abroad and sexually abuse children there.  "Now" it is time to
22   tell him that you cannot attempt to solicit young children to
23   produce sexual explicit images of themselves, nor can you do it
24   yourself -- whether it is with a hidden camera or a big fat
25   Canon in your hand.  "Now" is the time to tell him that you

Closing Statement

1  knowingly cannot possess child pornography.  Members of the

2  jury, "now" is the time to hold him accountable, and you do

3  that with your verdict.  Hold him accountable now.  Find him

4  guilty.

5          Thank you.

6          THE COURT:  Thank you, Mr. Sussman.

7          Members of the jury, what we're going to be doing

8  next is hearing closing argument from defense counsel and then

9  rebuttal from the Government.  Then I will have a few more

10 instructions from me.  After that will be your lunch break, and

11 we will have lunch for you in the jury room for deliberations.

12 But before we proceed, does anyone want to now take maybe a

13 10-minute break?

14         Okay.  Ten minutes.  Thank you.

15         Members of the jury, remember, don't discuss this

16 case with anyone, including among yourselves.  You will have

17 that opportunity.

18         Let's take a ten-minute recess.

19         (Open court; jury not present:)

20         THE COURT:  All right.  We are here without the jury.

21 We will start promptly in about eight minutes from now; nine

22 minutes from now.

23         (Recess.)

24         (Open court; jury not present:)

25         THE COURT:  All right.  We are going to bring in the

Closing Statement

1   were either adults in the restroom, maids cleaning up

2   Mr. Rockett's room, Mr. Rockett having consensual sex, who we

3   believe is an adult.

4           Now, there are a few images of naked individuals --

5   adults -- sometimes engaging in consensual sex acts that were

6   captured on this device, but we submit those images are not

7   child pornography.  Let's start with J███████ O██████.

8   J███████ O██████ is the young adult who was performing oral sex

9   and receiving oral sex from Mr. Rockett in the shower.

10  Obviously it is consensual.  Because this device left the

11  factory in 2008, and because these pictures were taken in 2010,

12  and we are talking about Defendant's 123, we know from the

13  testimony that J███████ O██████ was around 21 at the time that

14  Mr. Rockett engaged in consensual sexual acts with him.

15          We believe that the pictures depicted two different

16  bathrooms, and it sounds like the Government agrees.  We

17  disagree that they necessarily came from two different trips.

18  Let's start with the bathroom that has the pink shower curtain

19  on the left side of the picture, okay.  We believe that these

20  pictures depict J███ H█████ and J███████ L██████ in

21  Mr. Rockett's hotel room either in 2010 or 2013.

22          Now, I thought it was interesting the pictures that

23  the Government chose to show you of J███ H█████ to attempt to

24  show that he was a young child at the time -- or a teenager at

25  the time that this alleged act occurred.  I took pictures out

Rebuttal Argument

1    evidence we found because he is so sloppy." They want you to

2    engage in that type of mental gymnastics. We submit that

3    requires you to speculate, that requires you to close loops

4    that the Government failed to close for you, and that requires

5    you to infer things that are not in evidence for these reasons

6    we would also ask you to vote not guilty on Count 9.

7           Thank you very much for your time. Thank you for

8    listening so closely to the evidence in this case.

9           THE COURT: Thank you, Mr. Coit.

10          MR. COIT: Thank you, Your Honor.

11          THE COURT: At this time I'm going invite the

12   Government to deliver rebuttal.

13          MR. MALONEY: Thank you, Your Honor. May I have a

14   moment to set up the machines here?

15          Judge Simon, Counsel, members of the jury, I'm not

16   going to shout at you. I'm not going to raise my voice. I am

17   going to speak in a sharp tone or grab the podium. This case

18   is about evidence. This case is about what happened then and

19   what you are about to do now.

20          These are the charges; these are the acts. Count 1,

21   producing child pornography outside the United States from 2000

22   to 2013. We know that Steven Douglas Rockett was traveling to

23   Cebu. We he was having contact with multiple children. You

24   heard the evidence. You heard the testimony. You heard the

25   descriptions of what transpired there, the descriptions that

Rebuttal Argument

1  corroborated the account initially provided by

2  Christine Jumoa-as that day in her lawyer's office, where it

3  all started with her telling Matt Smith what's been going on in

4  her family and her concerns.

5          It was Matt Smith who discovered what the Government

6  submits are the only images of adult pornography that you heard

7  about in this case, and that evidence is important because it

8  puts into context what the defendant's sexual interests are.

9  He was sexually interested of photographs of his wife in the

10  shower.  The investigation progressed.  They did go overseas.

11  And did the Government work hard in this investigation?  You

12  bet.  And I will not stand here and apologize for the efforts

13  that these good men and women took to provide justice and voice

14  for children.

15          They found evidence that the defendant was traveling

16  to the Philippines, in Cebu, and having contact with children,

17  inviting them back to his hotel room.  They found that on his

18  computers.  They found that in his conversations.  They found

19  that in the pictures, in the videos, documented in the hidden

20  cameras.

21          They found multiple efforts by the defendant in his

22  Facebook messages to induce and enlist children to produce

23  images of child pornography.  N███ S███████ -- conversations

24  with the defendant -- a kid -- a kid who had lived with him

25  under trying circumstances -- circumstances that -- no,

Rebuttal Argument

1   Mr. Coit, not a criminal mastermind -- a master manipulator

2   used to his own advantage.  He knew the unique and particular

3   vulnerabilities that this child had.  He knew her troubled home

4   life.  He knew her family history.  He knew every angle and

5   twisted and turned that kid into knots.  He knew he had her.

6   He knew it would be okay if he dumped those kids off at DHS,

7   because he is Steven Rockett.  He is the rock star.  He can

8   walk around the streets of Cebu with impunity.  He did so

9   abroad, and he did so here in our country.  And now it is time

10  for you to look at the evidence of that.

11          The Government submits to you that these stubborn

12  facts will hold true to your scrutiny.  Despite the efforts by

13  the defense to thin slice this case, use your common sense, and

14  you will come to the right conclusions.  You know what he was

15  attempting to produce.  You know exactly what he was producing

16  with the images from the hidden camera.

17          Jack Rockett?  Are we talking about red herrings here

18  or what?  Look at the documents.  Yes, it may have been

19  purchased by Jack Rockett.  But where did it ship?  Read the

20  whole document.  It shipped to Steven Douglas Rockett on

21  179th Place in Aloha, Oregon.  That's where the computer went.

22  Where it come from?  It didn't come from Oregon.  Dell doesn't

23  make any computers in Oregon.

24          Possession of child pornography.  Folks, listening to

25  the arguments today, I'm reminded by this great quote from

Rebuttal Argument

1   Mark Twain.  "Get your facts first, then you can distort them

2   as you please."  Maybe that's not the best thing you want to

3   tell jurors who are going to go in there and deliberate.  But,

4   folks, we are not afraid of you finding the facts in this case.

5   We are encouraging you to look at the evidence in this case.

6   Look at all the evidence in this case.  Look at it

7   dispassionately.  Do not look at it in anger.  Do not look at

8   it in disgust.  Look at it critically.

9          We will talk about your feelings and your emotions

10  here in a moment, because those are part of the human

11  condition.  Your job, as jurors, is different today and through

12  your deliberation process.  You're still human beings, but you

13  have to understand how to process this evidence.

14         Defendant's arguments in this case.  He talks about

15  proof beyond a reasonable doubt.  Respectfully, folks, I am

16  going to trust Judge Simon to tell us what beyond a reasonable

17  doubt is and what the standards are there.  Common sense and

18  reason -- not unreasonable doubts.  We trust you with this

19  evidence.  We trust you with the disclosures.  We trust you to

20  evaluate these witnesses, these kids who came here to testify,

21  to tell you their story.

22         Look at the law.  The lawyers' arguments in this

23  case, probably thankfully at this point, are not evidence.

24  Evidence is what was received, what was testified to, the

25  descriptions provided.

Rebuttal Argument

1          What the defendant through his lawyer says, what we

2    know, what we know, what we know, what we know.  Look at your

3    notes, if you took any.  How many times did they say that in

4    their closing argument?  "What we know."  That's is for you to

5    decide.  The Government is going to trust you to do that here.

6    The lawyers' opinions are not evidence.  The lawyers' beliefs

7    and arguments are not evidence.

8          "Spare-no-expense prosecution."  We have already

9    spoken to that.  Yes, it's a complex case.  It's a fusion of

10   multiple different law enforcement investigations coming

11   together to work together to try and find these victims, these

12   kids -- these kids that started on Government's Exhibit 1,

13   complete unknowns to law enforcement, but for Christine

14   Jumoa-as's description to Detective Smith.

15         Special Agent Biehn went overseas.  Lo and behold --

16   these are real people.  These are real children.  These are

17   real kids who lined up to get money from the defendant; real

18   kids in his Facebook account getting things from him.  He is

19   sending them LBC boxes with a catch:  Send me pictures.

20   Special pictures.  Private pictures.  Only for me pictures.  No

21   shy.

22         These charges were investigated by competent

23   professionals and were brought where there were violations of

24   the law.  The Government is being taken to task for not forcing

25   people from another country to come here and testify.

Rebuttal Argument

1        You heard the testimony of the special agents who
2   went overseas to help these people come to the United States.
3   You heard about M███ T██, who ran away with his mother chasing
4   after him.  "No, no.  You need to do this."  You can't force
5   that.  Nor can we be held accountable for that missing
6   evidence, that piece of Charis Jumoa-as and H███████ J██████
7   and say that you didn't hear from them, so you have to
8   discredit all of that evidence.  Folks, come on.
9        You heard about Charis, her relationship to
10  Christine, that this family is all binding together behind the
11  defendant.  That's where the real community pressure is in this
12  case.  It is to support the defendant in that barangay where he
13  is a rock star.
14        "The Government's case is filled with evidence that
15  is designed to make you dislike the defendant."  Folks, that
16  evidence is to show the defendant's intent.  That evidence is
17  to show that he has demonstrated sexual interest in children.
18  Taken by themselves, the Facebook messages could have a
19  completely innocent explanation.
20        When those Facebook messages are tied to the camera,
21  hidden inside an alarm clock placed in the bathroom, with a
22  camera, with a DVR placed -- the DVR in your master bedroom,
23  hooked up to the TV set, with a remote control, wired into the
24  bathroom, triggered, turned on to record constantly, not in
25  motion capture, but a constant recordation when the children

Rebuttal Argument

1    are using the bathroom.  That's who we're talking about here.

2    That's this guy.  That's the defendant.  That's Steven Rockett.

3    That's what he is interested in.  That's the significance of

4    this evidence.

5            The defendant has made several arguments through the

6    course of this case.  This is my summary, my distillation, if

7    you will, of those arguments:

8            The Government's witnesses are lying because they

9    were bribed.

10           The Government's witnesses are lying because they

11   were pressured.

12           The Government's digital evidence is garbage, fished

13   out of the trash of his computers, the unallocated space, the

14   deleted files.

15           The images and recordings discovered and sought by

16   the defendant are legal images.  There was lots of back and

17   forth about what's not clear when you are not wearing clothes

18   if you are not naked.  Remember that?  Okay.  Let's simplify

19   all the negatives.  Let's call it what it is.

20           The argument is all these things, this camera, the

21   ones wired into the bathrooms -- it's little -- a pinhole

22   camera through the drywall.  That's what was placed inside that

23   house.  That's what was used to capture "legal images" of kids

24   in the defendant's Forest Grove house.

25           Remember, look at those images.  Look at what the

Rebuttal Argument

1   content is of those recordings from the Forest Grove house.

2   Watch carefully how the defendant interacts with the kids in

3   those images.  He places the towel or floor mat right where he

4   wants the kids to stand.  He places the towels on the far

5   opposite end of the bathroom in front of the vanity, in front

6   of the mirror, where they would have to stand, wet, as they got

7   out of the shower in that Forest Grove house.  They'd walk all

8   the way across, right in front of the mirror, in full view of

9   that camera mounted on the wall behind them just to get a towel

10  to dry off, ensuring they are naked.

11          You see his hand on this device or a device similar

12  to it -- fair enough -- adjusting it, pointing it, aiming it

13  right at the shower, knowing that the kids are about to go in

14  there.

15          And let's not forget:  The Government's timeline is

16  wrong.

17          Taking each of these in turn, but remembering that

18  the duties of the jury is to not engage in guesswork,

19  conjecture, and speculation.  That's one of the instructions

20  that Judge Simon read to you.

21          The Government bribed witnesses.  That's argument No.

22  1.  Hang on a second.  Do you remember how this all started?

23  The FBI had to go over and find them.  They didn't know who

24  these kids were.  They weren't coming to us looking for

25  handouts.  Most of these witnesses refused to travel to

Rebuttal Argument

1   Portland.  You heard Special Agent Biehn talk about the number

2   of witnesses that she had to talk to in that short period of

3   time that she was in Barangay Luz and Cebu.  You heard how she

4   split her team in half so they could double their efforts in

5   talking to all of these witnesses to try to figure out what

6   happened.  What was their contact?  What happened to these

7   people when they met with the defendant to document these

8   incidents and disclosures of sexual abuse and sexual

9   exploitation?

10        These folks were all paid the same as any other

11   witness.  They were compensated for their time and the

12   inconvenience of having to spend time with the FBI agents

13   trucking around the Philippines trying to get all that

14   documentations in order, about that complicated bureaucratic

15   process that you heard about that Agent Gordon and Agent

16   Prowell testified about.

17        You heard the suggestion here about the salary

18   disparity between what it costs for a witness here in Portland

19   and what that means to someone in Philippines, and that is now

20   a greater incentive for them to come and testify.  Folks, we

21   pay them the same.  We pay them what it costs to come here and

22   stay here and to eat here.  That they from a poor country, that

23   shouldn't matter.

24        You know who knows the circumstances of these folks

25   best?  The person who picked them, the defendant.  He knows

Rebuttal Argument

1  they are poor.  He knows where they are from.  He knows how

2  hard it is going to be for the Government to get all the way

3  over there and find them.  The compensation was never

4  conditioned on what they were to say.

5       What they testified to had already been reported well

6  before anything was ever said to them about compensation.  They

7  already disclosed their interactions with the defendant.  It

8  had already been documented.  That was in October of 2014.

9  Special Agent Gordon didn't talk to them until nearly a year

10 later about getting them to the United States and what would it

11 take and how the Government would help them come here to tell

12 their story to hold the defendant accountable.

13       Argument No. 2:  The Government pressured witnesses.

14 In fact, it is the very opposite.  The community pressures in

15 this case are actually to get these folks not to testify.  You

16 heard them talk about their concerns going back to the

17 barangay, where people learned that they testified in this case

18 against the defendant.  The community supports the defendant.

19 They are outliers.  Everybody else said, "FBI, no thanks.  I

20 don't want to come to Portland," except for these four brave

21 kids.

22       The defendant was providing the gifts, the money for

23 the pictures.  The incentives present were for them not to

24 cooperate, because if they did cooperate, then they could

25 continue to get the money, the gifts, the presents, the LBC

Rebuttal Argument

1   boxes from the defendant.

2          They came here at great risk to their personal

3   safety.  You heard the testimony from Special Agent Prowell

4   about the trip to Claveria, about how they were there, and how

5   they had to evacuate this terrorist-infested island making it

6   out from a terrorist island on a two-person boat, under cover

7   of darkness, five people on a kayak for two hours with one

8   little outboard motor to power them from one island to the

9   next, and yet this child's mother did that.

10          That's commitment, folks.  That's commitment to see

11  justice.  They risked social ostracization through the process

12  and at any step in the process they could have said, "No

13  thanks."  They could have run away just, like Mahal Tan did.

14  No one forced them to come.  No one forced them to say anything

15  but the truth.  And you heard that testimony.  What was the

16  most important thing that you were told in your meetings with

17  the Government:  Tell the truth.

18          Argument No. 3.  The Government's evidence is

19  garbage, the digital evidence, except you heard the testimony

20  of Mr. Hanada and of Mr. Lazenby.  They only found the evidence

21  where the defendant put it.  They recovered what they could.

22  This was a disciplined computer user who took great efforts to

23  conceal what he was doing on the computer.  Did he get sloppy

24  in the 24 hours before the police executed the search warrant

25  on the home?  Yes.  Yes, he did.  He didn't run his

Rebuttal Argument

1  East-TecEraser.  He didn't TOR browse.  He didn't encrypt

2  everything.  Had he done that, it would be a very different

3  case.  But the evidence is what it is.  There is not an agenda

4  by these computer experts.  They found it where they found it.

5       The defendant was the only person who used these

6  computers in this manner.  You heard the testimony of his

7  mother, his two children, and his ex-wife.  The ex-wife is the

8  person they are saying had the ax to grind to get him and set

9  him up, right.  Did she look like she was a sophisticated

10  computer user?  Did she look like she was competent to hack his

11  Facebook account and stage nefarious online child pornography

12  solicitations?  No way.  She wasn't that sophisticated.

13       J█████ and C█████.  Now, we are talking about

14  three years ago.  They were much younger, for starters.  Did

15  they look like they were sophisticated enough to use the

16  computer with all those encryption keys?  They testified to

17  you.  They told you, no, they never used that.  Maybe

18  J█████ used WinRAR, but he wasn't sure.  I showed him the

19  picture of the desktop.  No, he didn't use any of those

20  programs.

21       And lastly, Mrs. Rockett, the defendant's mother,

22  Grace Rockett.  She did not appear to be a sophisticated

23  computer user.  Those were the defendant's computer.  They were

24  in his office.  He used them.  They are trying to argue to you

25  and suggest to you that, hey, who would look at child

Rebuttal Argument

1   pornography in the office with the door propped open?  It is

2   what it is.

3          I'm sure you will note when you look at the

4   photographs of the scene the direction in which the office

5   screens were pointed.  They were pointed directly opposite of

6   the doorway.  No one could come in or out of that office

7   without the person who is using the computer knowing it, giving

8   them plenty of time to minimize any sort of images or activity

9   on the computer that you didn't want other people to find out

10  about.

11         The defendant was the most sophisticated computer

12  user in the home.  He was the only one who used many of the

13  program on the desktop.  The defendant aimed the cameras in

14  this case in a direction, in a manner so that they would

15  deliberately capture images of naked children.

16         Look at the evidence.  It is what it is.  They

17  weren't staged.  Mike Hanada didn't plant this stuff.  He

18  recovered what he recovered.  So did Justin Lazenby.

19         The defendant went to great lengths to hide his

20  activities.  These are hidden cameras.  These are not nanny

21  cams.  Play School, Graco, they don't make this bad boy.  This

22  is made surreptitiously, after-market, concealed right in

23  there.  Completely innocuous.  Trained investigators searching

24  the defendant's house walked right past the pinhole camera in

25  the bathroom not knowing it was there.  Nanny cams?

Rebuttal Argument

1        File-wiping software, East-TecEraser, disk cleaners,

2   encryption -- these were the tools the defendant used to hide

3   his activities.  He hid these cameras from the people he was

4   recording.  He hid the evidence of those recordations from his

5   friends, from his family members.  He tried to hide it from law

6   enforcement, from the Government.

7        Remember now, what photos do we know, with proof

8   positive certainty, that the defendant took?  The ones in the

9   shower, right?  The ones where he is receiving the oral sex

10  from J████ O████.  We know this because we see him with the

11  camera, wiping the lens off with the towel, taking the

12  pictures, aiming it down.  We know that those pictures were

13  taken.

14       Where are those pictures?  You can't speculate as to

15  what is inside the encryption.  You can draw inferences from

16  the circumstantial evidence in this case.  We know that those

17  pictures were taken.  We know that the Government could not

18  find them.  We know that the Government could not access

19  portions of his hard drive.  An entire drive was encrypted.  It

20  is reasonable to infer from that that the defendant hid those

21  pictures inside the encrypted vault so the Government couldn't

22  find them.

23       And about these pictures, they are consistent with

24  the scene from the 2007 stay that J██ D██ testified to in the

25  Park Lane Hotel.  Look at the pictures:  The door on the left,

Further Excerpts of Record 44

Rebuttal Argument

1    the towel rack in the center image, where the camera is

2    relative to the shower, the lighting, the scene, the

3    colorization.  It is the same.  If it is 2007, J███████ O██████

4    was 16.

5         From those facts you can infer the defendant was

6    conscious of the fact that those images were contraband.  He is

7    conscious of his guilt, and he is deliberately hiding that

8    evidence.  We know he took the pictures.  We can't find them.

9    What else do we know about those pictures?  We know quite a

10   bit.

11        The defendant's argument No. 4.  These images are

12   legal.  Judge for yourselves.  You alone are the conscience of

13   the community in this process.  If you are persuaded that these

14   images are lawful, that they are fine, that it is okay to hide

15   bathroom cameras and record images of children showering, if

16   you're okay with those images contained in the OOpreviews file,

17   those ten images that you looked at yesterday -- that's your

18   job.

19        If you're not okay with those, if you find that those

20   images are the lascivious, if you find that those images are

21   lascivious to the defendant, because, remember, that's another

22   consideration -- to the viewer.  Who is the viewer?

23   Steven Rockett.  What else do we know about the things that he

24   likes?  He likes naked people in the shower.

25        Are they lewd, lustful, filled with, or showing

Rebuttal Argument

1    sexual desire?  He chose the location of these images.  He

2    chose the camera angle.  He chose the heighth of the camera and

3    the locations, and these were chosen carefully and calculated

4    so that he could capture images of children naked in the

5    shower.  These images were taken covertly.  Why would one go to

6    these efforts to hide lawful conduct?  It shows consciousness

7    of guilt, again, folks.

8           What is the defendant sexually attracted to?  Ask if

9    yourselves these questions during your deliberations.  It is

10   part of the process.  If you're asking yourself what the

11   defendant is sexually attracted to, don't forget the 2013

12   conviction.  That demonstrates that he has a sexual interest in

13   children.  That demonstrates, not only certain children, but a

14   particular child, the one he was carrying the Facebook

15   conversations with asking for "front and back; no shy."

16          You are going to hear and you probably are going to

17   read these two yourselves, and you have got them in your jury

18   instructions.  These are the lasciviousness factors that I

19   think counsel read to you.  I'm not going to read them again.

20   I understand it is getting late here for lunch, so I am going

21   to wrap it up here pretty quickly.

22          But this is what we're talking about.  These are the

23   things you need to discuss for deliberations when you weigh in

24   and evaluate the merit of the Government's assertions.  Are

25   these lascivious?  Are they calculated to promote a sexual

1    response in the defendant?

2            Put that into context.  What images was he soliciting

3    from M████? Now, I don't have a screenshot of it, but when

4    you get back into your deliberations and you look at Exhibit 3,

5    the conversations with M████.  On the right-hand side, there

6    is a list of fields.  This was the evidence that was received

7    from Facebook from the defendant's Facebook account.  The

8    different fields indicate the recipient, the author, sent,

9    deleted, and by.  Where you find "deleted" is true.  The body

10   of the message, the content of the message, isn't there.

11           There are several deleted messages on the defendant's

12   Facebook message from M████, sent and received to M████.

13   They are deleted.  The content is gone.  You see later that

14   "deleted" becomes false.  Then there is a message.  It appears

15   that the conversation picks up midstream.  "Why you and me not

16   friend?  Why you blocked in your friend?  Why?"  That was from

17   M████.

18           Defendant's response, "Because it seems as soon as

19   you think I not send package to you, you stop chatting with

20   me."  And it continues.  And that's when they start talking

21   about pictures.  "Okay.  I not send pictures.  Okay.  You block

22   me."  There is some conversation going on about pictures before

23   that.

24           Now, put that together with Government's Exhibit

25   No. 4.  See, this doesn't happen when you thin slice the

Rebuttal Argument

1    evidence the way that Mr. Coit has argued to you that you

2    should.  If you consider the other messages that are

3    documented, in his conversations with Charis and the dates and

4    times of those messages with Charis where he is asserting to

5    Charis that M███████ wants to take pictures with H███████,

6    those correspond with the dates and times with the deleted

7    messages on M███████'s account.

8            How else would he know that M███████ wants to take

9    naked pictures with H███████ in April and May of 2013?  He

10   knows that because in these deleted messages with M███████ that

11   you have documentation, that's what they were discussing.

12   Consider the evidence together.  Don't thin slice it.

13           You are going to see these messages.  I'm not going

14   to read them to you.  Take a look.  Write it down.

15   May 13, 2013, they are talking about sending pictures with M.G.

16   H███████, the agent met her.  She is a small child.  You heard

17   the testimony about that being Charis' daughter.  Christine

18   knows who her sister's daughter is, and it is H███████.  And

19   she is a child.

20           We see the messages that the defendant is sending and

21   receiving about photos with M.G. to Charis.  Consider the

22   evidence in total.  Look at the similarities between the

23   contents in those messages and the contents in his messages to

24   N████.  Look at N████'s CARES tape.  Look at the demeanor of

25   that kid.  Is she making this up?  Because clearly that's what

Rebuttal Argument

1   they want you to believe -- she is a big fat liar.  She made up

2   this story about Steven Rockett, but it doesn't take into when

3   you put that together with Jennifer Wheeler's testimony about

4   delayed disclosure.

5        Take into Jennifer Wheeler's testimony about delayed

6   disclosure with respect to the witnesses from the Philippines.

7   It is understandable at that point, ladies and gentlemen, that

8   these kids don't want to talk about this stuff.  Who here wants

9   to come and talk to a roomful of strangers and talk about the

10  most intimate details of their private sexual life?  That would

11  be an incredibly difficult thing for an adult to do, much less

12  a child, a child who is brought halfway around the world to

13  speak to a roomful of strangers in a language that they only

14  kind of understand.

15       Put the evidence together.  Recall Jennifer Wheeler's

16  testimony.  Put that within the context of all the other

17  evidence.  It provides information for you to help process the

18  other testimony that you received in this case.

19       D.S. and B.S., D███ and B███.  You saw these

20  images.  If these are legal, why was the camera hidden in the

21  wall?  They came off of his computer.  They were edited on his

22  computer using the Pinnacle software, the movie-editing

23  software that's in evidence in this case.

24       And J███.  If she saw the defendant in 2007, she

25  was under 18.  If she saw him in 2010, she was under 18.  They

Rebuttal Argument

1   want you to believe that these pictures and videos here with

2   her brother, J███ H███, in the bathroom with the pink shower,

3   they want you to believe that was in 2013.  They need you to

4   believe that that was in 2013.

5        Look at her physical characteristics.  Compare it to

6   what you see in the pictures.  Put that in context with the

7   people who know J████████ best -- her sister, her brother --

8   who looked at those sanitized images that were shown to

9   J███ D███ and shown to her during this trial and their

10  estimations of age.  All the estimations were she is under 18.

11       Those of you with siblings -- think about that.  If

12  somebody shows you a picture of your brother or sister at a

13  given age, would you know exactly what age they are from a

14  picture that's taken from the childhood, and you have no idea

15  of the context of the setting, where and when and who else was

16  present?  You wouldn't know.  But you could tell generally how

17  old they were -- middle school, high school, elementary school.

18  You could gauge that.  And they did.  And they did their best.

19       The Government's timeline is wrong.  You will have

20  this in evidence.  You will be able to look at this and

21  scrutinize it closely.  Hopefully this will provide some

22  helpful insights to you in putting together the bigger picture

23  when these travels took place and when the evidence fits within

24  each of those periods of travel.

25       But their assertion that the Government's timeline is

Rebuttal Argument

1    wrong is absolutely rebutted by the testimony of J███ D███.  If

2    you believe that J███ D███ was truthful in this trial, your

3    verdict here is going to be pretty quick, because he sets the

4    stage for everything.  He remembers specifically one and only

5    one encounter with Steven Rockett, when he saw that movie.

6           Think for a moment, if you will, back to your own

7    childhood.  Do you remember the very first movie that you saw?

8    Do you remember all the plot lines, twists, and all the

9    details, who was with you, what you were wearing, what you ate,

10   what you ordered?  No.  You remember an emotional time.  You

11   remember the feelings associated with that.  He remembers the

12   very first time he went to the movies, because he got to go

13   with the rock star from Cebu City.  He remembers that.

14          He also remembers what happened afterward.  And what

15   happened afterward frightened him to such a degree that he

16   never went back to see Steven Rockett.  He knew where it

17   happened.  He knew what his age was.  He knew what movie he had

18   seen just prior.  That movie was in 2007.

19          The defendant stayed at the Park Lane in 2007.  The

20   independent records establish that.  He was only there one time

21   with the defendant.  He remembers the movie, the 2007 movie,

22   Dark Is Rising.

23          If the pictures of J███████ recovered from the

24   Dream Machine camera were from the 2007 trip, she was 15.  If

25   they were 2010 -- because he went there in January, and she

Rebuttal Argument

1   turned 18 in July.  They forgot -- for as thin as they try to

2   slice the Government's evidence, they forgot bit of testimony.

3   Do you remember the text file that Mike Hanada testified about?

4   The birthdays text file that was recovered from the defendant's

5   computer, it had J██████'s birthday listed on that list,

6   July 1992.  When he visited her in 2010, she was under 18.

7   They need you to speculate that the dates on this camera were

8   accurate at the time these pictures from who knows where were

9   taken.

10          The warehouse photos.  It is an office.  It is

11  something.  They couldn't say it wasn't Synopsys where the

12  defendant worked.  They have no idea who is depicted, when they

13  were taken, what they are taken of.  It is a pure guess,

14  exactly the type of thing that Judge Simon is going to tell

15  you:  Don't do that.  Don't speculate.  Don't guess.

16          They need you to believe that the Dream Machine was

17  set correctly in 2008 and that the battery died on the internal

18  clock and reset to January of 2000, and the defendant needs you

19  to ignore another piece of evidence.  You didn't hear him talk

20  about that.  What was the last access date on those files.  The

21  last access date was 2010.

22          So it stands to reason if you have got pictures from

23  your trip -- maybe it is not a trip to the Philippines to

24  sexually exploit children.  Maybe it is just a nice trip with

25  your family on your camera.  You come home after the trip, you

Rebuttal Argument

1   take the card out, you put it on the computer, you download the

2   computer files off of the SD card, and do what with those

3   images on the SD card?  Because you've probably filled the card

4   up on your trip, and you want to recycle that card, because

5   they are expensive.  You delete them.  And you delete them

6   after you get home from your trip to the Philippines in 2010.

7   That's what that shows.

8           Justin Lazenby would not guess about that.  Despite

9   how hard they pressed him in cross-examination.  He had a

10  theory.  Maybe, it is possible.  But, folks, anything is

11  possible.  What his testimony was that he didn't know.  He

12  didn't test it for that.  He didn't test it to run the battery

13  down and restart it and see what it did.  He didn't know how to

14  set the clock on that.  The Government's own geek squad expert

15  doesn't know how to set the clock on that thing.

16          Don't forget -- you have heard us say this throughout

17  this trial.  The "then and now" evidence.  This message between

18  the defendant and this "Hermes photog." via Flickr,

19  "Steven Rockett has invited you to see then and now set on

20  Flickr."  The response from Hermes photog. was, "Wow.  Hot,

21  even cropped.  My private e-mail is" -- and "by the way, do you

22  know a program called TrueCrypt.  If not, it is free and simple

23  to use and might be beneficial to download."

24          The "then and now" evidence.  That's not the only

25  place you've heard about "then and now" evidence.  You heard

Rebuttal Argument

1    about "then and now" evidence about the photos, the thumbnails

2    that were recovered from the defendant's Thunderbird e-mail

3    cache.  He was given an e-mail to send to in that message from

4    Flickr, and there are other photos that have "then and now"

5    associated with them.

6            Folks, understanding this "then and now" dynamic is

7    the key to this case.  It explains why the defendant wanted

8    pictures -- recent pictures of N███ naked.  It explains also

9    how the defendant tells Charis that he wants to see how the

10   children's bodies change over time; that he wants them naked.

11           The defendant maintained relationships with these

12   children for a period of years, by sending them LBC boxes and

13   communicating with them on an ongoing basis over Facebook.  You

14   heard about the folder on his computer, the folder entitled

15   "Begging," where he is keeping screenshots of other children

16   asking for things.

17           That evidence is important.  That is a list of

18   potential victims.  That's his to-do list.  He is continuing to

19   exploit them by sending birthday gifts, money, and the

20   "begging" folder.

21           Look at the defendant's Flickr chat history, where

22   they discuss the "then and now" pictures.  You have them in

23   evidence, and I'm not going to show them to you.  Once is

24   enough.  But the "then and now" photographs, the small Filipino

25   children then and now.

Rebuttal Argument

1          This evidence demonstrates, not only his criminal

2     activities and his intent, but it tells you why he is doing

3     it -- then and now.  He did all those things then.  He took

4     photos of those kids, with hidden cameras, and sometimes

5     overtly with other cameras.

6          We have seen pictures of him taking pictures of

7     children.  We have seen hidden cameras of him taking videos of

8     children, videos where he has carefully staged and directed the

9     children.  We see the video from the Forest Grove bathroom,

10    where he directs the small boy with the blond hair:  Stand over

11    there, come over here, with his gestures.

12         You see him and you remember the pictures of

13    J█████ D████ in that bathroom.  Remember how that video started.

14    Do you remember?  The big white American taking this small

15    child, this 11, 12-year-old boy, manhandling him by the arm,

16    sticking him in the shower, putting his hand in front of his

17    groin, indicating that he needs to take his shorts off.  That's

18    how that picture started.  That's what J████ D████ describes.

19    That's what he remembers.

20         Counsel says, "Hey, wait a second.  The oral sex, the

21    sexual contact, that's not depicted on this video.  That's

22    around the corner."  Right, it is not on the video.  The last

23    thing you see on that video -- one of the last things you see

24    on that video is you see the defendant come back into the

25    screen from the left to the right.  J████ D████ has a towel

Rebuttal Argument

1   around himself.  He takes the towel away from the child.  The

2   child is standing there -- cold, wet, and naked.  The defendant

3   puts the towel on top of the camera.

4         Remember, what do we know about this camera?  It is

5   motion-activated.  Images of oral sex weren't captured on this

6   camera.  It is covered with the towel, the towel the defendant

7   took from the defendant and put on the device.

8         The last thing you see is going off to the right, off

9   to the right where J██ D██ says he was molested "on the

10   cubicle" were his words for the toilet.  Then there is motion

11   for the camera, as J██ D██ is putting his clothes back on,

12   and it begins to record.

13         That's the evidence.  Those are the facts.

14   J██ D██'s testimony; he remembers this.  I say if you believe

15   J██ D██, your verdict is easy.  These are the things that

16   nightmares are made of.  You heard his words.  You heard the

17   testimony.  You heard the testimony, not only from J██ D██

18   about his experiences with the defendant, but you heard about

19   the nightmares that N██ had about her experiences with him as

20   well.

21         Then and now.  Now is the time for justice.

22         THE COURT:  Thank you, Mr. Maloney.

23         Members of the jury, if you will pick up the final

24   jury instructions that we passed out to you, go to page 21.  I

25   am going to pick up with instruction No. 30.

Further Excerpts of Record 56

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2017, I electronically filed the foregoing Further Excerpts of Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Jill C. Dozark*
Jill C. Dozark